## FIFTH N. BANK v. W. W. ASHWORTH.

### ERROR TO THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued October 23, 1888—Decided January 7, 1889.

1. If a bank, receiving a check upon another bank for collection, surrender the check to the drawee and receive a cashier's check in lieu thereof, its liability to its depositor becomes fixed, as much so as if it had received the cash.

2. The fact that the payee of the check had subsequently received from the drawer a sum of money on account thereof, would not establish a claim of set-off in favor of the collecting bank.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK, WILLIAMS and HAND, JJ.

No. 77 October Term 1888, Sup. Ct.; court below, No. 175 April Term 1885, C. P. No. 2.

A summons in case to the first Monday of March, 1885, was issued in an action by William W. Ashworth against the Fifth National Bank of Pittsburgh, to recover the sum of $2,622.25 with interest from May 24, 1884.

At the trial on February 9, 1888, the facts of the plaintiff's case were these:

On May 20, 1884, the plaintiff received from T. J. Watson his check on the Penn Bank for $2,622.25, and the same day indorsed and delivered it to the defendant bank, and received

credit for it on his deposit account.   The next day, May 21st, the check was presented for payment through the clearing house, but before noon that day the Penn Bank closed its doors, and that check, with others going with it through the clearing house, was not paid.   It was then returned through the clearing house to the defendant bank, protested for non-payment, and charged back to plaintiff.   On the afternoon of May 23d, the Penn Bank opened its doors for business for a short time, and was again open the next day, the 24th.   On the morning of the 24th, which was Saturday, the defendant bank sent the Watson check to the Penn bank, with other protested checks of small amount it held, and received a cashier's check for the aggregate amount, $2,932.14, delivering up the checks.   The check given by Watson was then charged up to his account by the Penn Bank and placed upon the file for cancellation.   On this day the Penn Bank paid all checks presented.   The cashier's check received by defendant bank was the same day deposited with the Tradesmen's N. Bank, through which it cleared, but on Monday, May 26th, the Penn Bank, though open for a few hours, closed its doors finally without paying any of the checks upon it coming through the clearing house, the Watson check being among them.

In the defendant's case, L. H. Williams, the cashier, testified that on May 21st, the plaintiff had drawn his own check upon defendant bank for $1,025, which came in and witness refused to honor it, as by the dishonor of the Watson check the plaintiff's account was not good for the amount and he notified the plaintiff thereof; that the plaintiff, as he afterward told the witness, then went to Watson, obtained from him $1,025 and took up his check himself.

The defendant then proposed to prove by the witness that the Fifth National Bank, as well as other banks of the city, had been requested by the Farmers Deposit National Bank, through which bank the Penn Bank cleared, not to send the protested checks separately into the clearing house, but to consolidate them in the shape of a cashier's check or memorandum, and send that; and in pursuance of that request the Fifth National Bank exchanged the protested checks held by it, including the check sued on, for a cashier's check or memorandum check; this as bearing on the question of diligence in the matter.

Objected to because the plaintiff is not a party to the transaction and had no notice of it, and as incompetent and irrelevant.

By the court: Objection sustained.[1]

The witness then testified in substance, under objection and exception, that the plaintiff when informed of the transaction, after the final closing, expressed his satisfaction with what had been done, because, holding the Penn Bank's cashier's check instead of Watson's, he thought he was in a better position, and at the same time, he had received from Watson $1,025 on account of the debt. Other testimony was adduced, under like objection, to the effect that this receipt of $1,025 was on account of the debt.

The court, EWING, P. J., charged the jury that if they found that on May 24th, the Penn Bank was paying checks upon it in the usual way of business, the receipt by the defendant bank of the cashier's check was a payment of the Watson check; that whether the receipt of the $1,025 by the plaintiff from Mr. Watson, was an account of the Watson check, as claimed by the defendant, or was a temporary loan, as claimed by the plaintiff, was immaterial to the defendant, and answered the points presented as follows:

The plaintiff requests the court to charge the jury:

1. That under all the evidence in the cause the plaintiff is entitled to recover the sum of $2,622.25 with interest thereon, from May 24, 1884, and the jury are instructed to find a verdict in his favor accordingly.

Answer: Affirmed, if the jury believe the evidence.[2]

If the court refuse this point then the following instructions are requested:

2. That a bank, with which a check has been deposited for collection, has no right to accept therefor a cashier's check. Such collecting bank must present the check for payment and only for payment, and if it surrender its depositor's check to the bank on which his check is drawn and accept from the latter bank the check for a like sum of the cashier thereof, it is liable to such depositor, because the law presumes damage; and the measure of its liability is the amount of the check, with interest from the day of its surrender.

Answer: Affirmed.

3. When a collecting bank presents the check of its depositor to the bank on which it is drawn, and, instead of requiring payment thereof, surrenders the check to such drawee and accepts for it a check for a like amount of the drawee's cashier, it is, as between the owner of the check so deposited for collection and the maker thereof, a payment thereof, and such maker is discharged from all liability with respect to it; and, as between such collecting bank and its depositor, it is attended with the legal consequences of actual payment thereof.

Answer: Affirmed.

4. Hence if the defendant assumed the duty of collecting the check drawn by T. J. Watson to the plaintiff's order and surrendered such check to the drawee thereof, the Penn Bank accepting for it the check for a like sum of the cashier of the said Penn Bank, the plaintiff is entitled to recover and the jury will find a verdict in his favor for $2,622.25, with interest thereon from May 24, 1884.

Answer: Affirmed.

The defendant requests the court to charge the jury:

1. That if they find that the check given by T. J. Watson to the plaintiff on the Penn Bank, and deposited by the plaintiff with the defendant bank, was presented by the defendant in due and proper time to the Penn Bank and was dishonored, by reason of the closing and failing of the Penn Bank on May 21, 1884, and thereupon was protested by the defendant and charged back to plaintiff's deposit account with the defendant, and notice of these facts given to plaintiff, the defendant no longer owed any duty to the plaintiff with reference to said check, and a re-deposit of said check with the defendant cannot be inferred from the mere fact that after the dishonor of said check and the charging of it up to defendant's account by the defendant, the plaintiff did not withdraw it from the defendant's hands.

Answer: The first point is refused. It may be that after the check was protested and charged up against the depositor, the defendant bank was not bound to go further without the direction of plaintiff. But they assumed to act as though it was still deposited with them and delivered up the check belonging to their depositor.

2. That after the happening of the facts set out in the fore-going point, if the jury find them to be true, the defendant was not bound to take any action whatsoever with reference to the dishonored check, even though the Penn Bank opened its doors and resumed business, until it was instructed with reference thereto by the plaintiff; and if before receiving any such instructions it voluntarily presented the check in question to the Penn Bank, not for payment, but for the purpose of obtaining a cashier's check for it and other checks, for the purpose of sending the same through the clearing house, it cannot be held liable by reason of the fact that when the cashier's check reached the Penn Bank through the clearing house it was not paid, even though the jury believe that the check in question would have been paid if payment had been demanded when the cashier's check was taken, unless the jury find that under all the circumstances the defendant was guilty of gross negligence in the premises.

Answer : The second point is refused. If you believe the testimony, which is uncontradicted, that the defendant bank delivered up the Watson check to the Penn Bank and ac-cepted a cashier's or teller's check for it and other checks combined, and the Watson check was charged up to him on the books of the Penn Bank and the check canceled on May 24, 1884, it was a payment of the Watson check as between the Fifth National Bank and Ashworth.

3. That if Ashworth, the plaintiff, on Saturday morning, May 24, 1884, was informed of the voluntary action of the defendant as to the check in question and that it had taken a cashier's check to be sent through the clearing house and did not object thereto or demand greater diligence from the de-fendant, he cannot recover.

Answer: The third point is refused. There is no pretence of an order from Mr. Ashworth to the bank to so present his check, and there is no evidence of notification or of any act of Ashworth to relieve the bank from the responsibility it as-sumed in surrendering the check and accepting the check of the Penn Bank therefor.

4. That the defendant was not bound to anticipate the re-opening of the Penn Bank or to keep itself informed promptly as to the fact of such re-opening.

Arguments.

Answer: The fourth point is affirmed.

5. That the fact of the suspension of the Penn Bank did not, after its re-opening, impose upon the defendant the duty of exercising with reference to checks upon it any higher degree of diligence than it was bound to exercise with reference to checks upon any other bank.

Answer: The fifth point is refused.

The jury returned a verdict for the plaintiff for $3,095.15. A rule for a new trial being refused, the defendant took this writ assigning as error:

1. The refusal of the defendant's offer.[1]
2. The answer to the plaintiff's first point.[2]

*Mr. John S. Ferguson* (with him *Mr. Phil. C. Knox* and *Mr. James H. Reed*), for the plaintiff in error:

When a check is received on Saturday, the payee has until the close of banking hours on Monday to present it: Mead v. Caswell, 9 Mod. 60 ; O'Brien v. Smith, 1 Black 99. Presenting a check and having it certified is not a demand for the money deposited : Girard Bank v. Bank of Penn Tp., 39 Pa. 92. By the certification of a check the drawer is not discharged : Beckford v. First N. Bank, 42 Ill. 238. The alleged negligence, therefore, upon which the recovery was had, lay solely in the fact, that instead of having the Watson check certified, the defendant accomplished the same end by taking for it a cashier's check, for the cashier's check was not essentially different from the ordinary certified check. Moreover, the act of the defendant was affirmed by the plaintiff, when if he had spoken he would have received his money, as the cashier's check if presented over the counter on Saturday would have been paid. Again: After the first suspension of the Penn Bank, Watson paid Ashworth $1,025 on account of the check. The check then stood as an order by Watson on the Penn Bank to pay to him $1,025 and to pay the residue to Ashworth.

*Mr. J. M. Stoner*, for the defendant in error:

The law of the case is, that the surrender of the Watson check and the acceptance of the cashier's check in its stead,

was to be followed by all the legal consequences of actual payment and put the defendant in just the same position as if the Watson check had been paid in good current funds: Essex Co. N. Bank v. Bank of Montreal, 7 Biss. 193; Smith v. Miller, 43 N. Y. 171 (3 Amer. R. 690); First N. Bank v. Leach, 52 N. Y. 350 (11 Amer. R. 708); Commercial Bank of Penn. v. Union Bank of N. Y., 1 Kern. 203; Story on Prom. Notes, §§ 115, 389; McCulloch v. McKee, 16 Pa. 294: Hays v. Lynn, 7 W. 524; Story on Agency, 115, 451; Ward v. Smith, 7 Wal. 447; Marine Bank v. Fulton Bank, 2 Wal. 253; Merchants N. Bank v. Goodman, 100 Pa. 422. The doctrine of affirmance or ratification is not applicable. A full knowledge of the facts and circumstances are necessary to a ratification, and the party must know he would not be bound without such ratification: Pittsburgh etc. R. Co. v. Gazzam, 32 Pa. 340; Persch v. Quiggle, 57 Pa. 260; Moore v. Patterson, 28 Pa. 505; Schrack v. McKnight, 84 Pa. 26. As to the $1,025, which the defendant claims should have been allowed in reduction of plaintiff's demand, it is submitted that when the courts say that the surrender of a depositor's check to the drawee and the acceptance of something else in lieu thereof, is attended with all the consequences of actual payment, they mean something.

OPINION, MR. JUSTICE PAXSON:

It is safe to say, as a general rule, that when a bank receives a check from one of its depositors for collection, it must return him the check or the money. It is also equally clear that if the collecting bank surrenders the check to the bank upon which it is drawn, and accepts a cashier's check, or other obligation, in lieu thereof, its liability to its depositor is fixed, as much so as if it had received the cash. It has no right, unless specially authorized to do so, to accept anything in lieu of money. For this latter proposition it is sufficient to refer to the Merchants' National Bank of Philadelphia v. Goodman, 109 Pa. 422; Marine Bank v. Fulton Bank, 2 Wal. 252; Ward v. Smith, 7 Ia. 447; McCulloch v. McKee, 16 Pa. 289; Commercial Bank of Pa. v. Union Bank of New York, 1 Kern. 203; Graydon v. Patterson, 13 Ia. 258.

When payment of the check in question had been refused

by the Penn Bank, and it had been duly protested, the Fifth National Bank of Pittsburgh, in this case the collecting bank and defendant below, could have relieved itself from liability by returning the dishonored check to the plaintiff below who had deposited it; or, it might, perhaps, have called upon the latter for instructions as to any further proceedings, and had it received and followed such instructions, I am unable to see how any liability could have attached to it. Neither of these modes was pursued. The defendant retained the check, and made a further attempt to collect it. The plaintiff alleges that in doing so the defendant failed to use due diligence, and has thereby rendered itself liable to him for the debt.

The check in question was passed through the clearing house on May 21, 1884, but was not paid, the Penn Bank closing its doors on that day. It was opened again on Friday, May 23d, at about 3 o'clock P. M. It remained open all the next day (Saturday), but closed finally on the following Monday morning. All claims presented against it on Saturday were paid; the checks that came through the clearing house on Monday were not paid. The defendant bank sent this check, with others, to the Penn Bank on Saturday, and received what has been called a cashier's check for the aggregate amount. The check in controversy was for $2,622.25, drawn by T. J. Watson, and was delivered to the Penn Bank when the cashier's check was taken. It was charged up against Mr. Watson's account in the Penn Bank, and was placed on file there with the usual marks of cancellation upon it, and is still retained by that bank. The cashier's check was sent to the clearing house on Monday, and when it reached the Penn Bank the latter had finally closed its doors, and shortly thereafter made an assignment for the benefit of its creditors.

We need not discuss the question whether the defendant failed to exercise due diligence in not sending the dishonored check through the clearing house on Saturday. That it could have been done, and was done by some other parties, distinctly appears by the evidence, and is not disputed. We think the defendant bank fixed its liability by surrendering the check to the Penn Bank and accepting the cashier's or teller's check of that bank. As between the defendant and its depositor, this amounted to payment. The plaintiff has neither his check nor

his money. Watson's account with the Penn Bank was good when the check was charged up to him. I am unable to see, therefore, that the plaintiff has any remedy against either Watson or the Penn Bank.

It was alleged, however, that in any event the defendant should have credit for the sum of $1,025, which it is said Watson paid the plaintiff on account of this check after the same had been protested. There is no assignment of error which specifically covers this point, nor was the court below asked to so instruct the jury by any point or written request appearing in this record. It is true the second assignment of error is perhaps broad enough to cover it. The fact remains, nevertheless, that there was no request for the specific instruction referred to. Nor are we able to see how it would have benefited the defendant had it been asked for. The equities, if any existed, between the plaintiff and Watson, could not have been settled by these banks. The collecting bank could have demanded no less than the face of the check, and the Penn Bank was bound to honor the check for its full amount, if in funds. It may be Mr. Watson may have a claim against the plaintiff in case the check is paid, but that does not concern the defendant bank.

Judgment affirmed.

