NATIONAL BANK OF COMMERCE, Appellant, v. AMERICAN EXCHANGE BANK.

Division Two, July 3, 1899.

1. **Demurrer to Evidence:** LEGAL INTENDMENT. Where the trial court declares that under the pleadings and evidence plaintiff can not recover, every legal intendment in favor of the plaintiff is to be drawn from the evidence adduced, in a review of the case in the appellate court. And if from all the facts disclosed there was any substantial evidence showing plaintiff was entitled to recover upon the whole case, it should have been submitted to the jury.

2. ———: ———: IN FAVOR OF DEFENDANT. But, on the other hand, if any one of the defenses set up was a good defense to the action, and was sustained by the evidence which was all one way and with respect to which there was no conflict, then such declaration of law was properly given.

3. **Banking:** PAYMENT OF DRAFT BY CHECK: LIABILITY: AGENCY. A bank to which another bank has sent a draft for collection, being authorized to receive money only, has no implied power to receive a check or anything else except money in payment, and if it does so it assumes the risk of its payment, and becomes liable to the bank sending the draft for the amount of the check with interest from the date of its receipt.

4. ———: ———: ———: CHECK ON ANOTHER BANK. When such bank receives a check on another in payment of the draft, and surrenders the draft, it makes the check its own and its liability to the bank in whose favor the draft was drawn, becomes fixed, as much as if it had received the cash instead of the check.

5. ———: ———: ———: ———: CUSTOM. Nor is it any defense for the surrender of the draft on the receipt of the check, that it was the usual and customary way of transacting such business.

6. ———: ———: ———: ———: WITHOUT LOSS. Nor is the liability of such bank lessened by the fact that neither the bank sending the draft to it, nor the one in whose favor it was drawn, sustained any damage or loss by its acceptance of the check.

7. ———: ———: ———: BY MISTAKE. Nor is its liability lessened by the fact that the bank paid the draft by mistake as to the solvency of the drawer of the check and his liability to pay it, or any other mistake of fact.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

ELIJAH ROBINSON for appellant.

(1) The plaintiff bank is not chargeable with negligence in its manner of handling the collection of the draft in question. In taking from Tyler his check on the Metropolitan Bank, and in putting said check in the clearing house for collection, it did all that it was legally required to do, that is, "it conducted itself in the transaction in strict accordance with the customary and established mode of transacting such business." Morse on Banks, sec. 251; Russell v. Hankey, 6 T. R.

VOL. 151 mo—21.

12. (2) Neither the defendant bank nor its New York correspondent sustained any damage whatever by reason of the course pursued by plaintiff, and plaintiff is therefore entitled to recover the money from defendant regardless of the question as to whether it was negligent in handling the collection of the draft in question. Morse on Banks, sec. 252, note 6 and sec. 247c; Boone on Banking, sec. 206; Bank v. Behon, 91 Ky. 560; Bank v. Commonwealth Bank, 109 Mass. 513; Stevens v. Park, 73 Ill. 387; Sahlein v. Bank, 90 Tenn. 226; Madderom v. Heath Mfg. Co., 35 Ill. App. 588. (3) If money be paid to an agent, and the agent be notified, before transmitting the same to his principal, that the payment was made through a mistake, the money may be recovered back. Mechem on Agency, secs. 560, 561, 562; Elliott v. Swartout, 10 Peters 137; Buller v. Harrison, 2 Cowp. 568; Herrick v. Gallagher, 60 Barb. 566; Penhallow v. Doane, 3 Dallas 54; Cox v. Prentis, 3 Maule & Sel. 348. (4) The fact remains that the defendant received $9,000 of the plaintiff's money, which was remitted to it by plaintiff under a mistaken impression that Tyler was perfectly solvent and his check would be paid. This impression was justified by the existing circumstances; and no damage whatever has resulted to the defendant by reason of this mistaken impression on the part of the plaintiff. Plaintiff is therefore justly entitled to recover from the defendant this amount of money; and defendant can not avoid liability by invoking technical rules as to forms of actions which were abolished years ago. Morse on Banks, sec. 249; Lyle v. Hinnebarger, 17 Mo. App. 75; Dobson v. Winner, 26 Mo. App. 335; Koontz v. Bank, 51 Mo. 275; Johnson-Brinkman Co. v. Bank, 16 Mo. 569.

THOMAS E. RALSTON for respondent.

(1) The plaintiff was a collecting agent only, and, as such, it was its duty to collect the $9,000 draft in money and it had no power to receive anything else therefor, without

special authority. Ward v. Smith, 74 U. S. 447; Bank v. Ash-worth, 123 Pa. St. 212; Bank v. Union Trust Co., 148 Ill. 342; Dan. Neg. Inst. (4 Ed.), secs. 334 and 1625; Essex Co. Nat. Bank v. Bank, 7 Bissell 193; 3 Am. and Eng. Ency. of Law (2 Ed.) 804. (2) When plaintiff, voluntarily and contrary to defendant's instructions to protest all paper and telegraph nonpayment of all items over $500, delivered up the $9,000 draft, stamped it as paid, and received Tyler's check in payment therefor, its liability for the payment of said $9,000 draft became fixed; it thereby assumed the risk of payment to it of Tyler's check and the law presumes damages to the defendant and the owner of the $9,000 draft. Dan. Neg. Inst. (4 Ed.), secs. 334 and 1625; 1 Morse on Banks, secs. 252a and 247c; Bank v. Ashworth, 123 Pa. St. 212 Whitney v. Esson, 99 Mass. 308; Commercial Bank v. Bank, 11 N. Y. 203; Pratt v. Foote, 9 N. Y. 466; Bank v. Richardson, 101 Mass. 287; Anderson v. Gill, 79 Md. 312; Canterbury v. Bank, 91 Wis. 53. (3) The defendant being openly and notoriously a mere agent, carrier or vehicle to transfer the proceeds of the $9,000 draft to the Hide & Leather Bank, as plainly shown by the indorsement "for collection and remittance" on the draft itself, this action will not lie either upon grounds of money paid by plaintiff to defendant under mistake of facts or otherwise. Cary v. Curtis, 44 U. S. 236; Bamford v. Shuttleworth, 11 A. & E. 926; Stephens v. Badcock, 3 B. & Ad. 354; Sims v. Britton, 4 B. & Ad. 375; Sadler v. Evans, 4 Burr. 1985; Greenaway v. Hurd, 4 T. R. 553; Wharton on Agency, sec. 517. (4) The Hide & Leather Bank was a *bona fide* holder, for full value paid, of the $9,000 draft. Hence it was legally entitled to payment thereof, and plaintiff's mistaken belief in the "solvency" of Tyler is not such a "mistake of fact" as lays a good foundation, either in law or morals, for a recovery of the $9,000 paid by plaintiff to defendant. Canterbury v. Bank, 91 Wis. 53; Bank v. Richard-

son, 101 Mass. 287; U. S. v. Barlow, 132 U. S. 280. (5) This is an action for money had and received upon the ground of money paid by mistake of fact and the implied promise raised by the law to return such money. Skeen v. Johnson, 55 Mo. 24; Cary v. Curtis, 44 U. S. 246. The $9,000 draft was voluntarily paid by plaintiff to defendant as agent of the New York bank, which bank required defendant to hold the money received from plaintiff, and defendant had, by agreement with the New York bank, remitted to it the $9,000 before the same was received from plaintiff. There was no mistake on the part of defendant and the plaintiff is not entitled to recover against this defendant whatever its rights, if any, may be against the Hide & Leather Bank. Cary v. Curtis, 44 U. S. 246; Mathews v. City of Kansas, 80 Mo. 231; Evans v. Halleck, 83 Mo. 376; Norton v. Bohart, 105 Mo. 630; Brown v. Fagan, 71 Mo. 563; Skeen v. Johnson, 55 Mo. 24; Wharton on Agency, sec. 517.

BURGESS, J.—This is an action to recover the sum of $9,000, the amount of a draft sent by the Hide and Leather National Bank of New York, to the defendant at St. Louis for collection, and by it forwarded to plaintiff at Kansas City, Missouri, for collection and return. The action is predicated upon the alleged justifiably mistaken belief with respect to the solvency of the drawee, one Frank E. Tyler, who was doing business under the name of Benj. McLean & Company, and therefore took his check on another bank for the draft, and delivered the draft to him, and on the same day sent its draft to defendant for the amount, supposing the check to be good and that it would be paid on presentation in the usual course of business. But the check proved to be worthless.

The case was tried by the court, a jury being waived. There was a judgment for defendant, and plaintiff appeals.

For several years prior to April 21st, 1893, Frank E. Tyler, had been doing business in Kansas City, New York and

a number of other places under the name of Benj. McLean & Co. On the 17th day of April, 1893, his New York representative in the name of Benj. McLean & Co., drew a draft upon him in favor of the Hide and Leather National Bank of that city for $9,000 on Benj. McLean & Co., Kansas City, Mo., which was on the same day delivered to the Hide & Leather National Bank, and by it placed to the credit of the drawers. On the same day that the Hide & Leather National Bank received said draft, it forwarded it, together with some other collections, to its correspondent, the defendant bank, for collection, at the same time, according to its custom, charging the same to defendant, which upon their receipt by defendant were credited to the Hide & Leather National Bank. The defendant received the draft on the 19th day of April, 1893, and on the same day sent it by mail to the plaintiff, for collection, by whom it was received at the opening of the bank for business on the following morning.

Tyler's place of business was at Armourdale, Kansas, some five or six miles from the National Bank of Commerce, and upon receipt of the draft the plaintiff bank informed him by telephone that it held it for collection, whereupon Tyler promised to send over and pay the same. This was the customary way of making collections from Tyler. But in this instance there was evidence upon the part of the defendant which tended to show that the draft upon Tyler was accompanied by a letter from it containing the following, to wit: "Caution. Protest all paper and deliver no bills of lading without payment of draft unless otherwise instructed. Wire non-payment items over $500. Return promptly all unpaid items." Upon the part of plaintiff however there was evidence tending to show that this letter was never received by it.

At the same time plaintiff received the draft in question from the defendant, it also received from the St. Louis

National Bank, for collection, another draft on Tyler for $1,283.20, to which there was a bill of lading attached.

About 3:30 o'clock in the afternoon of the day upon which Tyler was notified by plaintiff that it had the $9,000 draft for collection, he sent to plaintiff his check on the Metropolitan National Bank of Kansas City, for the amount of both of said drafts; and, upon the receipt thereof, the plaintiff surrendered to him both of said drafts, and the said bill of lading, and remitted to defendant the amount of the $9,000 draft.

At that time Tyler's financial standing seems to have been unquestioned.

When Tyler's check was received by plaintiff it was after banking hours, but the next day the 21st, it was placed in the clearing house for collection. The taking of the check, and placing the same in the clearing house the next day for collection, seems to have been in accordance with the prevailing custom among the banks of Kansas City in regard to such collections. The Metropolitan Bank refused payment of the check, of which the plaintiff was notified about three o'clock in the afternoon of the 21st, and that evening plaintiff's assistant cashier notified defendant by wire of its non-payment and requested it not to remit the amount to the Hide & Leather National Bank, but the telegram was not received by defendant until the morning of the 22d, when defendant wired the Hide & Leather National Bank that plaintiff claimed to have remitted through mistake, and asked it to cancel the charge made against defendant's account, which it refused to do.

Tyler was indebted to said Hide & Leather National Bank, on a note in the sum of $10,000, which was independent of this $9,000 transaction, and on the 24th of April it begun suit against him in New York on said note, and attached everything he had in that State; and realized out of the attached property about $7,000.

In the evening of the 21st, Mr. Schwitzgeble, plaintiff's assistant cashier, caused a suit to be brought against Tyler in the district court of Kansas City, Kansas, and a writ of attachment to be issued, which was levied on some property supposed to belong to him. There was never any personal service, but he was notified by publication, and, on July 12, 1896, judgment by default was entered in this case. The property levied on under the writ of attachment in this case was covered by a prior lien, a mortgage, for a great deal more than its value (and also by a prior attachment in favor of the Metropolitan National Bank), and nothing was ever realized out of this suit.

On the morning of the 22d of April the plaintiff wired to several different places where Tyler was supposed to have property, directing the bringing of attachment suits. A small quantity of property was found and levied upon at El Paso, Texas, and also at Albuquerque, N. M., but soon thereafter an agreement was made between plaintiff and Tyler, whereby the proceeds of this property, less expenses, were turned over to plaintiff and applied to reimbursing it for amount paid on the said $1,283.20 draft to which the bill of lading was attached, and was not fully sufficient for that purpose. Thereupon all attachment suits were to be dismissed, and all were dismissed, except that at Kansas City, Kansas, which, through some oversight, was not dismissed. Plaintiff supposed it had been dismissed.

At the time of the institution of these suits, and for a long time thereafter, the plaintiff had no knowledge as to the actual facts connected with said $9,000 draft, not knowing the circumstances under which the same was taken by said Hide & Leather National Bank, or whether said bank had paid out anything on the faith of the remittance by plaintiff to defendant. Soon after the institution of these suits, plaintiff wrote to defendant that it would look to it for said $9,000, but that it believed the money might be collected from Tyler by prose-

cution of these suits, and regarded it more just that Tyler's property should pay it than that either of the banks should lose it, and that unless defendant informed it to the contrary, plaintiff would take it for granted that it was understood between it and defendant that it should treat the claim as its own and make an effort to collect the money, and that by doing so it should not waive any of the rights as between it and defendant.

To the letters containing these statements Walker Hill, defendant's cashier, replied by letter of date April 29, 1893, "I wired New York on Monday, if possible withhold credit but they declined to release us if we had proceeds of items in our hands. . . . I will say to you and your attorney in the most emphatic language, that any suits you may bring to get your money back from McLean, will be at your cost and risk, as this bank denies any liability legally, morally or any other way."

Neither the defendant nor the Hide & Leather National Bank sustained any damage or lost any remedy against, or recourse upon said Tyler or his property, or anyone else, by reason of anything done by plaintiff concerning said draft. Tyler was hopelessly insolvent, and the said Hide & Leather Bank levied upon, and subjected to the payment of another claim, all the property he owned, except the small quantity the proceeds of which were received by plaintiff as before stated.

This action was begun on the 17th day of March, 1894, and thereafter plaintiff took depositions and ascertained the facts above stated as to the connection of said Hide & Leather National Bank with said $9,000 draft, the suit by said bank against said Tyler.

At the close of all the evidence the court declared the law to be that under the pleadings, and all the evidence in the action, the plaintiff could not recover, and in accordance therewith rendered judgment for defendant.

I.   In passing upon the action of the court in declaring the law to be that under the pleadings and evidence plaintiff was not entitled to recover, every reasonable intendment in favor of the plaintiff is to be drawn from the evidence adduced, and if from all the facts disclosed there was any substantial evidence tending to show that plaintiff was entitled to recover upon the whole case, it should have been submitted. But upon the other hand if either one of the defenses set up by defendant was a good defense to plaintiff's action, and was sustained by the evidence which was all one way, and with respect to which there was no conflict, then the law was properly declared.

With these legal principles in view was plaintiff guilty of negligence in its manner of handling the collection of the draft in question?   Plaintiff contends that it was not, and that in taking from Tyler his check on the Metropolitan Bank, and in putting it in the clearing house for collection, it did all that it was legally required to do; that being the usual and customary way of transacting such business.

In 1 Morse on Banks and Banking (3 Ed.), sec. 252, it is said:   "If the bank takes the check of the party who is bound to pay the paper, and thereupon surrenders the paper to him, it assumes the responsibility for the check proving good.   If it is not paid, the bank is still obliged to pay the amount to the person from whom it received the paper."   [Bank of Antigo v. Union Trust Co., 149 Ill. 343.]   The general rule is that an agent being authorized to receive money only, has no implied power to receive a check, or anything else except money, in payment, and if he does so he assumes the risk of its payment, and becomes liable to his principal for the amount of the check with interest from the date of its receipt by him. [Essex County Nat. Bank v. Bank of Montreal, 7 Bissell 193.] In such circumstances the law will presume damages to the principal and dispenses with proof thereof.   [1 Daniel on Negotiable Inst. (4 Ed.), sec. 335.]   Later on the same author

says: "In the United States it is quite certain that a banker or other agent, holding a bill or note for collection, would act at his peril in delivering it up on a receipt of a check for the amount; and that if the debtor did not pay the amount in money, and drawer, or indorsers were not duly notified, they would be discharged, and the loss would fall upon the collecting agent. . . . This seems to us the correct doctrine, for the agent exceeds authority in taking the check, and therefore acts at his peril. And while it may be, and as a general rule undoubtedly is, the practice of creditors, in mercantile communities, to take checks in the collection of debts, and frequently to surrender other instruments on receiving them, such a practice, on the part of the principal, falls far short of a usage which would permit the agent to do likewise." [Id., vol. 2, sec. 1625.]

When plaintiff bank received Tyler's check on another bank in payment of the draft of the Hide & Leather Bank on him, and surrendered to him the draft, it made the check its own and its liability to the Hide & Leather Bank became fixed, as much so as if it had received the cash. [Fifth N. Bank v. Ashworth, 123 Pa. St. 212; Commercial Bank v. Union Bank, 11 N. Y. 203.]

It is true that it is said in 1 Morse on Banks and Banking, sec. 252: "But if the bank can show that it has conducted itself in the transaction in strict accordance with the customary and established mode of transacting such business, it seems that this might suffice to acquit it of all responsibility for any mishap. For it has been held in England that a banker who gave up bills indorsed to him for collection, upon receiving the acceptor's check, which was subsequently dishonored, could not be charged with negligence because the transaction was not an unusual one. It may be doubted whether it would free a banker from liability if he should simply show a frequent habit of parting with paper upon receiving the check of the debtor; or whether he would not have to go fur-

ther, and show positively that it was understood in all such transactions that the banker discharged his full duty to his customer by so doing. Otherwise, the usage might amount only to a usage of bankers to assume a liability to their customers in such cases." But it must be apparent to any one reading the language quoted, that the author was not entirely satisfied with the position therein assumed, as the only authority cited in support thereof is Russel v. Hankey, 6 T. R. 9, and, besides it is not in harmony with what is previously said in the same section.

That plaintiff at first regarded the check as its own, and so treated it, is evidenced by the several attachment suits instituted by it against Tyler on the check, and its communication with defendant both verbal and written with respect thereto. It is true that shortly after the institution of the attachment suits, but not until then, plaintiff wrote to defendant that it would look to it for said $9,000, but that it believed the money might be collected from Tyler by prosecution of these suits and that unless defendant informed it to the contrary, plaintiff would take it for granted that it was understood between it and defendant, that it should treat the claim as its own, and make an effort to collect the money, and that by doing so it should not waive any of its rights as between it and defendant; but defendant replied that any suits that plaintiff might bring to get its money back would be at its own cost and risk, and denying all liability upon its part. It doesn't look reasonable, nor are we disposed to believe, that plaintiff would have pursued this extraordinary remedy in order to collect a debt which it did not regard as its own, and that it would have continued its pursuit, especially after having been notified by defendant that if it did so, it would be at its own cost and risk.

Whatever the usage may be with respect to the surrender of an obligation for the payment of money to the obligor by the owner thereof upon the receipt of a check given for its payment, as between an agent of the principal and the

principal's debtor it has no application in this case. [Hall v. Storrs, 7 Wis. 253.] For under such circumstances such a usage or custom would be unreasonable and could not be invoked as a justification for such a course. [Whitney v. Esson, 99 Mass. 308.]

II. But plaintiff contends that neither the defendant bank nor the Hide & Leather Bank sustained any damage whatever by reason of the course pursued by plaintiff, and therefore plaintiff is entitled to recover the money from defendant regardless of the question as to whether it was negligent in handling the collection of the draft in question.

We are however unable to agree to this contention. The draft was received by plaintiff after banking hours on the 20th, and if demand for its payment in money had been made upon Tyler that evening and refused, and prompt notice of its nonpayment given to the Hide and Leather Bank, it would have received the notice the same evening, at any rate by the next morning when in fact it did not receive notice of the nonpayment of the check until the 22d, a delay of from twenty-four to thirty-six hours. It is true that upon receipt of the notice of the non-payment of the check the Hide & Leather Bank attached all it could find of Tyler's property in the State of New York, on another claim which it held against him, yet if the draft had been presented and payment refused and it had at once been notified on the evening of the 20th, it may be that it could have found other property of Tyler's which it could have attached on this debt. But in the view we take of the case the measure of damages is of no importance as in no event is plaintiff entitled to recover.

III. Another contention is that the money, although paid by plaintiff to defendant as the agent of the Hide and Leather Bank, as defendant was notified before transmitting it to its principal that it was paid through a mistake, may be recovered back. It seems both upon principal and authority that where money has been paid by one joint agent to another

Bank v. Bank.

through mistake, and it has not been forwarded by the latter to the principal, or he has not done some act before notice of the mistake upon the assumption that the payment was good, by which he would suffer some damage if it should be held invalid, that the agent so paying may recover back the money thus paid. [Mechem on Agency, secs. 560, 561 and 562; Herrick v. Gallagher, 60 Barb. 566; Cox v. Prentis, 3 Maul. & Sel. 345; Buller v. Harrison, 2 Cowper 565.] That this is the general rule there can be no question, but does it apply to this case. The Hide and Leather Bank was a holder for value of the draft, and was legally entitled to its payment, and if as we have said, plaintiff in receiving Tyler's check for the draft, and in surrendering the draft to him did so without authority, and thereby made the check its own, we are unable to see how defendant or its principal could in any way be affected by plaintiff's mistake as to Tyler's solvency and ability to pay the check. Moreover the insolvency of Tyler was not such a mistake of fact as would entitle the plaintiff to recover the amount of the remittance to defendant in payment of the draft. [Boylston National Bank v. Richardson, 101 Mass. 287.] Plaintiff took the check from Tyler on the faith of his solvency, and without being induced to do so by any fraud or mistake of fact or without information or knowledge with respect thereto. It had no right "to act upon mere guesses and surmises" [U. S. v. Barlow, 132 U. S. 271], and then claim that what it did was through a mistake of fact. [Canterbury v. Bank of Sparta, 91 Wis. 53.]

It is insisted by defendant that plaintiff having elected to treat the check as its own, and brought several attachment suits thereon against Tyler, that it can not now pursue a different and inconsistent remedy by prosecuting this suit against it, but as what we have already said necessarily results in an affirmance of the judgment it is unnecessary to pass upon that question.

For these considerations we affirm the judgment. Gantt, P. J., and Sherwood, J., concur.