### 6999.  EMPIRE COTTON OIL COMPANY *v.* SELLARS.

Where a bank sends to a correspondent bank a draft, with a bill of lading attached, for collection, and the drawee has on general deposit with the collecting bank, when the draft is received, a sum more than sufficient to pay it, and, in conformity with his usual custom and course of dealings, instructs the collecting bank to pay the draft, and the collecting bank agrees to pay it by charging it to his account, and thereupon surrenders to the drawee the bill of lading attached to the draft, in accordance with this understanding and agreement, the transaction constitutes a payment of the draft as between the drawer and the drawee, although the collecting bank was insolvent at the time and was placed in the hands of receivers on the following day, its insolvency being unknown to the drawee at the time he received the bill of lading and directed that the amount of the draft be charged against his account with the bank, and, so far as appears, being also unknown to the officials of the bank at that time.

DECIDED JULY 6, 1916.

Complaint; from city court of Cairo—Judge Willie.    October 18, 1915.

*Bell & Weathers, Branch & Snow,* for plaintiff.

*S. P. Cain,* for defendant.

WADE, C. J.    The Empire Cotton Oil Company sued O. D. Sellars for $362 and interest, alleged to be due for cottonseed meal. The defendant filed a plea of payment, setting up that on a day named, prior to the commencement of the suit, he paid the amount sued for; that the plaintiff shipped the meal and drew on him, through the Bank of Whigham, Georgia, for the purchase-price, attaching the draft to the bill of lading, and he paid this draft to the bank and received from the bank the bill of lading attached thereto.    The case was submitted to the presiding judge, without the intervention of a jury, upon the following agreed statement of facts, with the right of direct exception reserved to both parties. The agreed statement of facts was as follows: "The plaintiff shipped to the defendant, on February 8, 1915, a car of meal, as set forth in the petition.    Said car was shipped 'order notify,' and a draft, with the bill of lading attached, for the sum of $362 was placed in the hands of the First National Bank of Quitman by the plaintiff, said draft being drawn on the defendant.    The First National Bank of Quitman sent the draft to the Bank of Whigham for collection and remittance, on February 9, 1915.    The defendant went to the Bank of Whigham on February 10, 1915, and, following a custom he had with said bank, received said bill of lading and left the draft with said bank to be charged to his account, with instructions to so charge it.    He did not give a check on his account, but left the draft to serve as a check, as he had done in similar cases.    The defendant had on deposit with the Bank of Whigham at the close of business on February 10, 1915, the sum of $865.22, having deposited on that day $31.93, and having withdrawn by check on that day $89.30, leaving a balance of $865.22 as stated.    He had this amount on deposit in said bank to his credit when the bank closed and went into the hands of receivers on February 11, 1915.    The officers of the bank did not charge the draft to the account of the defendant, and no entries appear on his account after February 10, 1915.    The draft was not marked paid by the bank, and no entry of the transaction was made whatever by the bank.    The draft remained in the Bank of Whigham and

was returned to the First National Bank of Quitman by the receivers of the Bank of Whigham on March 10, 1915. At the time the defendant received the bill of lading from the Bank of Whigham he did not know that the bank was insolvent, nor was this known to the Empire Cotton Oil Company or the First National Bank of Quitman at the time the draft was sent to the Bank of Whigham for collection, or at the time the defendant received the bill of lading, although at that time the Bank of Whigham was insolvent. At the close of business on February 10, 1915, the Bank of Whigham had on hand in cash $1,022.03, and at the close of business on February 11, 1915, when the bank closed and went into the hands of receivers, it had on hand in cash $141.47. The draft, with all entries thereon, is attached as a part of this statement of facts.

Empire Cotton Oil Company

Quitman, Ga., Feb. 8th, 1915.

On demand pay to the order of First National Bank $362, three hundred sixty-two & 00/100 dollars, value received, and charge to account of

O. D. Sellars,                                    Empire Cotton Oil Company

Whigham, Ga.                                                    Manager.

Countersigned: Allen Rive, Cashier.

[Endorsements]

Pay to the order of
any bank, banker or trust company.
All prior endorsements guaranteed.
Feb. 9, 1915.
First National Bank,
64-186 Quitman, Ga. 64-186.
H. L. Young, Cashier.

The court rendered judgment for the defendant, and the plaintiff excepted.

Ordinarily the bank collecting a note or draft is the agent of the holder, and is in no sense the agent of the maker. Dodge v. Freedman's Savings & Trust Co., 93 U. S. 379 (23 L. ed. 920). And, as a general rule, when a bank receives a check from a depositor for collection, it must return to him either the check or the money. If the collecting bank surrenders the check to the bank on which it

is drawn and accepts a cashier's check or other obligation in lieu thereof, its liability to its depositor is fixed, as if it had received the cash. It has no right, unless specially authorized to do so, to accept anything in lieu of money. Fifth National Bank of Pittsburgh *v.* Ashworth, 123 Pa. 212 (16 Atl. 596, 2 L. R. A. 491, 493), and cases cited. "A bank which receives a sight draft for collection should not surrender an accompanying bill of lading until the draft has been paid." 3 R. C. L. 613, § 241. In support of this statement the case of *Hobbs* v. *Chicago Packing &c. Co.,* 98 *Ga.* 576 (25 S. E. 584, 58 Am. St. R. 320), is cited. "Where a bank sent a note to a correspondent for collection, and the latter, which had the maker's money on deposit, with instructions to pay it on the note, charged the amount to the maker, and credited it to the sender of the note in the regular course of business, it constitutes a payment, though the bank failed the next day, and returned the note without endorsing anything thereon, or accounting for the collection." Michie on Banks and Banking, 1414.

In the case under consideration it appears that the bank did not comply with the instructions given by the drawee and charge off the amount of the draft against his account. Had the amount been so charged against the account of the debtor in compliance with the instructions given to the bank by him, a simpler question would have been presented for solution. It is insisted by the plaintiff that the Bank of Whigham was its agent to collect the draft, and also the agent of the defendant to pay the same; that the defendant had on deposit with the bank sufficient funds to pay the draft, and the bank by virtue of that deposit was his agent to hold the funds and pay out or apply the same as directed by him, and, though the defendant directed the bank to apply a part of his funds on deposit with it, and pay the draft, that the payment could not be considered so complete as to discharge the liability of the debtor to the creditor until express assent on the part of the agent to so apply the money, since, on account of the fact that bank was also agent of the drawer, a mere direction by the drawee to apply to the draft money which the dual agent held for him would not constitute a legal application of such money, unless there was evidence that the agent expressly or impliedly, as the agent of the drawer, consented to apply the money as directed. Moore *v.* Norman, 52 Minn. 83 (53 N. W. 809, 18 L. R. A. 359, 38 Am. St. R. 526).

Conceding, for the purposes of this case, the correctness of this position, the record clearly discloses not only that the collecting bank, as the agent of the creditor or drawer, impliedly consented to apply the funds in its hands belonging to the debtor, so far as might be necessary, to the payment of the draft, in compliance with the usual custom between its depositor, the drawer, and the bank, as to such drafts, and nothing whatever appears in evidence to negative the conclusion that the agent of the creditor so consented to apply the money of the debtor; but the fact that the collecting bank surrendered to the debtor the bill of lading attached to the draft, after receiving instructions from him to charge the amount of the draft against his account, amounted in effect to an express agreement by the bank to apply the money in its hands as directed by the debtor, and was an affirmative act on the part of the bank showing its acceptance of that money as agent of the creditor. "Where the agent of the creditor to receive payment is also the agent of the debtor, and as such receives money belonging to the latter which he has been directed by the latter to apply in payment of the creditor's claim, the payment is not to be considered complete, so as to discharge the liability of the debtor to the creditor, until the common agent has expressly assented so to apply the money received by him, or has done some act showing acceptance of such money as agent of the creditor. The effect of such debit and credit of accounts has chiefly arisen where the common agent was a bank." 22 Am. & Eng. Enc. Law, 578. It was said in *Smith Roofing &c. Co.* v. *Mitchell*, 117 *Ga.* 772 (45 S. E. 47, 97 Am. St. R. 217), that "where one gave to another, in payment of a debt, a check upon a bank at which he had on deposit sufficient money to meet the payment of the check, and the payee deposited the check for collection in another bank, which immediately forwarded it to the drawee bank for payment, an entry on its books by the drawee bank charging the amount [account] of its depositor with the amount of the check was equivalent to the payment thereof. The drawee bank then held the amount of the check as the agent of the payee, and the drawer was discharged from liability on the debt for which the check was given." Here, as in *Hobbs* v. *Chicago Packing &c. Co.*, supra, the bank actually made an entry on its books charging the account of its depositor with the amount of the check, and the court held that this was equivalent to payment of the same.

In the case of *Pollak* v. *Niall-Herin Co.,* 137 *Ga.* 23 (72 S. E. 415, 35 L. R. A. (N. S.) 513), which is more nearly in point, the Supreme Court held: "Where a bank sends an accepted draft to a correspondent for collection, who receives in payment the check of the acceptor, being a depositor with the collecting bank and having on deposit a sum in excess of the check, and the collecting bank surrenders the draft to the acceptor and remits its own check to the initial bank, which check is not paid·because of the failure of the remitting bank, such transaction constitutes a payment of the draft as between the drawer and the acceptor, although the collecting bank may have been insolvent at the time, its insolvency not being known to its officials or the depositor."

As already said, in the present case there was no such precise affirmative action on the part of the bank, but, in our opinion, the surrender of the bill of lading, under the instruction from the drawee to charge the draft attached thereto against the account of the debtor, who then had on deposit ample funds in that bank to pay the same, was of itself conclusive evidence of the consent of the bank to apply the funds of its depositor as directed by him. In other words, the mere surrender without payment in cash of the bill of lading, which it was the duty of the bank to hold until the attached draft was paid (5 Cyc. 508 (f) ), was in itself an affirmative acceptance of the instructions from the debtor to treat the draft as a check on his account with the bank. We have not been able to find a ruling of the Supreme Court or of this court which covers the precise point involved, but, under the principle laid down in 22 Am. & Eng. Enc. Law, supra, that where the agent of the creditor to receive payment is also the agent of the debtor, and is instructed to apply money in his hands belonging to the latter to the payment of the creditor's claim, the payment is complete and discharges the liability of the debtor to the creditor, if the common agent expressly agrees so to apply money in his hands belonging to the debtor or money received by him for the debtor, "or has done some act showing an acceptance of such money as agent of the creditor," the surrender of the bill of lading, attached to a draft due on demand, was an affirmative act sufficiently indicating the acceptance by the agent of the creditor of so much of the money on deposit with it as was necessary to pay the draft, in accordance with the instructions then given.

It is insisted by counsel for the plaintiff that, in order for the collecting bank to have held the defendant liable or to have justified its application of his funds on deposit with it to the payment of a draft against him in its hands for collection, the drawee must have accepted the draft in writing, under the provisions of the Civil Code, § 3222. If the correctness of this view be admitted, it is apparent that the contract came within one of the exceptions provided for in section 3223 of the Civil Code, since the surrender of the bill of lading by the bank undoubtedly constituted such a part performance as would have supported the parol agreement by the drawee to accept the draft and have it charged against his account with the collecting bank.

We think the court did not err in holding that the transaction set out in the agreed statement of facts supported the plea of payment, and that the plaintiff was not entitled to recover against the defendant. *Judgment affirmed.*