### 22627. FOSTER *v.* PEOPLES BANK.

SUTTON, J. 1. As "a general rule, when a bank receives a check from a depositor for collection, it must return to him either the check or the money. If the collecting bank surrenders the check to the bank on which it is drawn, and accepts a cashier's check or other obligation in lieu thereof, its liability to its depositor is fixed, as if it had received the cash. It has no right, unless specially authorized to do so, to accept anything in lieu of money." *Empire Cotton-Oil Co.* v. *Sellars,* 18 *Ga. App.* 377, 379 (89 S. E. 454). While it has been held that custom

or usage may justify a collecting bank in receiving as payment the check or draft of the debtor drawn on another bank, the more general and better view is that if a check drawn on another bank, or any kind of paper payable outside of the collecting bank, is accepted, this is only conditional payment, and the collecting bank is responsible until the money is collected thereon. 7 C. J. 614, §§ 276, 277.

2. The fact that the pass-book given to the depositor contained a printed stipulation that the plaintiff bank reserved the right "to send items direct to institutions where payable and to accept their exchange drafts in lieu of money" does not show that the bank had special authority from the depositor to receive anything from the drawee bank except cash in payment of the check, where the attention of such depositor is not particularly called thereto, or he does not assent thereto expressly or impliedly. It is not sufficient that such stipulation appears in the front of the pass-book. The case is not one in which the party must know that he is accepting a contract, as where he is accepting an insurance policy, but is more analogous to the case of special conditions and limitations printed on the back of a railroad-ticket. *Highfield* v. *First National Bank*, 45 *Ga. App.* 431 (6), 437 (165 S. E. 135).

3. A usage or custom among banks, in collecting a check or draft for a depositor, to surrender it to the drawee and receive in lieu of the cash a check or draft drawn by the drawee on a bank in a distant city, has no application as between the depositor and the collecting bank, and such a custom or usage can not be invoked by the collecting bank as a justification for receiving the check or draft of the drawee in lieu of cash, at least in the absence of knowledge on the part of the depositor of such custom or usage at the time he turns the check over to the collecting bank. National Bank of Commerce v. American Exchange Bank, 151 Mo. 320, 331, 332 (52 S. W. 265, 74 Am. St. R. 527, 534); Hall v. Storrs, 7 Wis. 253; Whitney v. Esson, 99 Mass. 308 (96 Am. D. 762); Chicago First National Bank v. Citizens Savings Bank, 123 Mich. 336 (82 N. W. 66, 48 L. R. A. 583); Wagner v. Crook, 167 Pa. 259 (31 Atl. 576, 46 Am. St. R. 672).

4. Where a cashier's check of a bank in a certain city was deposited with another bank in that city after ten o'clock a. m., and where the custom of such banks was to present checks so deposited the next day for payment, and the bank receiving such cashier's check for deposit presented it to the drawee bank for payment and accepted in lieu of cash an exchange check drawn in its favor by the drawee bank on a bank in a distant city, instead of the cash called for by such cashier's check, no reason appearing why it was unable to obtain the cash from the drawee bank, and the drawee bank failed, and the check on the distant bank was protested for nonpayment, this constituted payment of the cashier's check by the drawee bank as between such collecting bank and the depositor, even though it was customary for the banks to transact business in this manner. *Comer* v. *DuFour*, 95 *Ga.* 376, 379 (22 S. E. 543, 30 L. R. A. 300, 51 Am. St. R. 89); *Empire Cotton-Oil Co.* v. *Sellars*, supra; *Pollak* v. *Niall-Herin Co.*, 137 *Ga.* 23 (72 S. E. 415, 35 L. R. A. (N. S.) 13); Farley National Bank v. Pollock, 145 Ala. 321 (39 So. 612, 117 Am. St. R. 44, 2 L. R. A. (N. S.) 194, 8 Ann. Cas. 370, and note); National Bank

of Commerce v. American Exchange Bank, supra; 1 Morse on Banks (3d ed.), § 252; Bank of Antigo v. Union Trust Co., 149 Ill. 343; Midland National Bank v. Brightwell, 148 Mo. 358, 71 Am. St. R. 608.

5. The depositor, who indorsed the cashier's check in blank when he deposited it, is not liable to the collecting bank as an indorser, the cashier's check having been paid as between the depositor and the collecting bank when the latter accepted the exchange check of the drawee bank in lieu of the cash called for by the cashier's check.

6. Accordingly, under the pleadings and evidence in this case, the court should have given in charge to the jury the instruction requested by the defendant, "that if the plaintiff carried the cashier's check issued to J. T. Foster by the Citizens Bank to the Citizens Bank and accepted exchange on some other bank in lieu of the cashier's check, without the knowledge and consent of J. T. Foster, the plaintiff did so at its own risk; and if the plaintiff sustained a loss thereby, they can not hold J. T. Foster liable for the same." It follows that the court erred in overruling the motion for a new trial. The other special grounds of that motion do not show error.

*Judgment reversed. Stephens, J., concurs. Jenkins, P. J., dissents.*

DECIDED AUGUST 18, 1933. REHEARING DENIED SEPTEMBER 2, 1933.

*Willis Smith, Smith & Millican,* for plaintiff in error.
*Boykin & Boykin,* contra.

JENKINS, P. J., dissenting. The facts of the instant case are in most respects similar to those set forth in the decision on a former trial (*Foster* v. *Peoples Bank*, 42 *Ga. App.* 102, 155 S. E. 62), from which it appears that the defendant sought to show, as one of his two defenses, that the plaintiff bank accepted the deposit of the cashier's check in controversy as cash, and not for collection. Were this established, it would, of course, end the controversy in the defendant's favor. This question, as was held in the former decision, was for the jury. On the second trial there was some additional testimony by the cashier of the plaintiff bank upon this proposition, which the defendant now claims to be conclusive. The ordinary meaning of one particular portion of the cashier's testimony might be construed to bear out this contention. He swore: "I accepted it then as a cash item." Counsel for the defendant (plaintiff in error) contend that this clearly shows that the check was not accepted under what is presumed to be the nature of the transaction, that is, for collection, but that he accepted the check in lieu of cash and as cash. I do not so construe his evidence. This particular language, as I construe it, is manifestly a mere trade term used by bankers, as is shown by his complete testimony along that line. This was as follows: "If there was any conversation between us, I don't recollect. Just the usual course of business. I accept a cashier's check on the bank just as any other check. We accept it in payment of indebtedness. And I accepted it then as a cash item. Just as some personal check, or any other check, just a regular item. A cashier's check does not necessarily represent that a person has gone to a bank and paid money for the paper." And: "I accept all checks when they are brought there to put on deposit. When checks are deposited by any one in the bank, I give them credit for the money. Then if the check is not paid, it is charged back. If it wasn't paid, it is charged back against the account." However, as indicated in the former decision by this court, it is my opinion that the facts and circumstances of the transaction, including the subsequent acts and conduct of the bank as indicating or throwing light upon its own interpretation, were sufficient to authorize, but not to require, the jury to find that the real intention of the parties was not the presumptive intention, and that the deposit was intended to be accepted as cash. The jury, however, necessarily must have found to the contrary, and in favor of the plaintiff bank on this proposition.

The defendant further pleaded, as a second defense, that even if the bank was, as it contended, merely a collecting agent, it was negligent in failing to exercise proper diligence in collecting the deposited cashier's check. On the former trial a verdict was directed in favor of the plaintiff, which action was reversed by this court and a new trial ordered, so that the jury might pass on both of the defenses. On the second trial, upon the submission of the case to a jury, a verdict was found in favor of the plaintiff bank. As already indicated, in order to have done so, the jury must necessarily have first found that the bank did not receive the cashier's check as cash, but accepted it only as a collecting agent.

With regard to the second defense, as to the plaintiff's negligence, the decision of the majority of the court is based upon the special ground of the motion for new trial, that it was error to refuse the defendant's written request to charge the jury that if the plaintiff bank carried the cashier's check to the maker bank, "and accepted exchange on some other bank without the knowledge and consent" of the defendant, the plaintiff did so at its own risk; and if it sustained loss, the defendant could not be held liable therefor. This ruling is tantamount to a holding, upon the general grounds, that the evidence on the issue of the plaintiff's negligence in the handling of the cashier's check and the acceptance of the exchange check in lieu of cash demanded a verdict for the defendant. It is therefore necessary to consider the testimony on this issue, and the question of the burden of proof as to loss and injury, in showing whether the cashier's check could and would have been paid in cash, if cash had been demanded. The petition as amended, the evidence under the issues made by the pleadings, and the judgment for the plaintiff, all go to show that the liability of the defendant was based by the plaintiff on the original cashier's check drawn by the defunct Citizens Bank, made payable to the order of the defendant and indorsed in blank, on which the defendant received the proceeds from the plaintiff. This check was dated December 28, 1925, deposited with plaintiff bank on December 29, 1925, after the customary hour of the local banks for clearing their respective checks, and was cleared according to the usual custom and practice of such banks on the following day, that is on December 30. It appears that the plaintiff in clearing this with other checks on the drawee, the Citizens Bank, received from the

drawee a cashier's check drawn on funds held by its correspondent bank at Baltimore, Maryland. Promptly on the same day, the plaintiff entered for collection this check, which, however, was not paid and could not have been collected, by reason of the closing of the drawer, the Citizens Bank, on December 31, 1925. There was no evidence that the Citizens Bank actually had sufficient funds with which to pay the original check on either December 30 or 31. The evidence, in so far as it tends to throw any light upon this question, seems to indicate that such was not the case. The defendant himself testified that he had $7,000 in the Citizens Bank, which it appears was then upon the verge of closing its door. He swears that he drew out this entire deposit on December 28, receiving $5000 and the $2000 cashier's check, and deposited the check in the plaintiff bank on the following day; and that on the next succeeding day, before the check on the Maryland bank could have been cashed, the Citizens Bank became defunct.

The evidence thus showed facts and circumstances of the deposit by the defendant, and the attempted collection by the plaintiff of the original cashier's check, which could be taken as throwing light on the question of the plaintiff's negligence, especially as to whether the defendant, in view of a desperate situation, desired to make use of plaintiff's facilities to collect the remaining $2000 from funds of the failing bank other than the cash which it had or failed to have in its own vaults. These circumstances the jury could have considered on the question of the plaintiff's negligence as a collecting agent, assuming, of course, that they first reached the conclusion that the check was not deposited and received as cash. As they must necessarily have so found by their verdict, there remains only the one question—whether, under all the facts and circumstances in evidence, a verdict for the defendant on the question of negligence was absolutely demanded, as my colleagues by their ruling on the request to charge in effect have held.

When the plaintiff bank introduced the original cashier's check, indorsed in blank by the defendant, and showed its loss by its failure to receive the proceeds, and that the defendant had received such amount, it established a prima facie case, unless it indisputably appeared that the loss was occasioned by the plaintiff's own negligence, acting on its own responsibility. As shown by the former decision, it appears that on the previous trial there was a

motion by the defendant in the nature of a general demurrer, which was necessarily overruled, since the petition set forth that the transaction was handled in the customary manner "and as contemplated would be handled." Never at any stage of either trial has any specific attack been made upon the petition as showing that the plaintiff bank, acting on its own responsibility, was guilty of negligence per se as a collecting agent. Not only did the petition itself fail to show negligence on the plaintiff's part, such as would preclude its recovery, but the admitted evidence when taken as a whole may indicate that even had the plaintiff bank with reasonable and proper diligence made actual demand for cash on the deposited cashier's check, instead of accepting an exchange check on a solvent correspondent bank in which the drawer bank had funds to meet it, it might not have been able to obtain such actual cash from the vaults of the failing bank, and consequently that no injury resulted from such failure.

It is well recognized that negligence, even admitted negligence, which causes no injury, gives no ground of complaint or relief to the opposite party. Personally, as intimated in the former decision, if it had been proved, that is indisputably proved, that the funds in question could not have been obtained in cash from the vaults of the failing bank, I would be willing to hold that the plaintiff bank, as a mere collecting agent, would be entitled to recover. Surely, under such circumstances, it should not be penalized for grasping a brand from the burning by seeking to collect the claim from a solvent correspondent bank, which (as the defendant's plea itself states) held sufficient funds of the Citizens Bank to pay the exchange. It appears perfectly true, as pointed out by the majority decision, that the plaintiff bank made no showing whatever to the effect that the defendant knew and had expressly or impliedly agreed to the memorandum printed on the passbook, or that he knew of the plaintiff's custom in acting in conformity therewith. But if acting as it did resulted in no harm to the defendant, then the plaintiff ought not to be made to suffer. See, in this connection, 7 C. J. 614, note 52(c). While the evidence upon the question as to whether the plaintiff bank could have actually compelled payment in cash from the failing bank is purely circumstantial and somewhat meager, I am still of the opinion, as was held in the former decision in this case, that it would not do

to say that there is no scintilla of evidence going to show that such was the case. The evidence being similar in the two trials, I think that it was a jury question here, just as it was adjudicated to be there. Not only is this true for the reason just indicated, but I think that the question of the bank's diligence or negligence was a jury question for another reason. It appears without dispute that the exchange check was valid, that it was drawn on a solvent bank, in which the drawer (as the answer states) had funds to meet it. It appears that the plaintiff took prompt steps, on the day that it was received, to make collection, and that it was turned down on January 4, not because the Citizens Bank did not have funds in the Maryland bank to pay the check, but solely because the Citizens Bank had been taken over by the State on December 31 or January 1, for liquidation. The status would be a very different one if the exchange check had been bogus. I am not prepared to hold in effect, as a matter of law, that the plaintiff was negligent under the circumstances in its efforts to collect the deposited check. If the Citizens Bank had held out until January 4, its check would undoubtedly have been paid. The evidence so shows. Irrespective of any question as to whether the plaintiff could have demanded and received the cash from the Citizens Bank, I am not prepared to say, as a *matter of law,* that the immaterial delay of two days, exclusive of a legal holiday and Sunday, caused by presenting the check at Baltimore, amounted to a lack of ordinary care, such as would cause the plaintiff and not the defendant to sustain the loss. A jury might perhaps so hold; but questions of diligence and negligence are primarily for the jury, and will not be resolved by the courts, except in plain and unmistakable cases. If there be any fact or circumstance going to indicate that the plaintiff could not in fact have demanded and received the proceeds of the cashier's check in cash, it unquestionably acted in the interest of the defendant in obtaining a valid exchange on a solvent bank, holding funds to meet it. This would be true whether the plaintiff knew or did not know of the unsound condition of the Citizens Bank. If the plaintiff bank could not be charged with anticipatory knowledge of the failing condition of the Citizens Bank (and there is nothing to indicate such knowledge), then, no matter if it could have demanded and received the cash, it was a question for the jury to decide whether the *delay* actually caused by the procedure taken amounted to a lack of ordinary care.

In addition to all that has been said, it may be true that the burden was on the defendant to prove the allegations of his plea that the Citizens Bank had funds on hand sufficient to pay its cashier's check. This he entirely failed to do. See, in this connection, 7 C. J. 623, 624, notes 51, 52, (a), (c), 53) ; Jefferson County Savings Bank *v.* Hendrix, 147 Ala. 670 (39 So. 295, 1 L. R. A. (N. S.) 246, notes), holding that the burden of proving actual loss and damage rests upon the party claiming negligence against the bank.