CHICAGO—FIRST DISTRICT—MAY, 1922.    227

The People v. La Salle Street T. & S. Bank, 225 Ill. App. 227.

The People of the State of Illinois ex rel. James J. Brady, Auditor of Public Accounts, Complainant, v. La Salle Street Trust & Savings Bank et al., Defendants.

State Bank of Omaha, Petitioner and Appellee, v. Chicago Title & Trust Company, Receiver of La Salle Street Trust & Savings Bank, Respondent and Appellant.

## Gen. No. 26,746.

1. BANKS AND BANKING—*liability of collecting bank surrendering note in exchange for worthless check.* Where a note is sent to a bank for collection and the bank takes a check of the party who is bound to pay the note and surrenders the note and the check is not good, the bank is nevertheless liable.

2. BANKS AND BANKING—*want of damage to owner as affecting collecting bank's liability for surrendering note.* A bank which has received a note for collection and which surrenders it for a worthless check cannot set up as a defense to a claim of the owner of the note that the latter has not been damaged because the note was worthless.

3. APPEAL AND ERROR—*when contention contrary to master's finding cannot be maintained.* On an appeal from the allowance of a claim against the receiver of an insolvent bank in which it is agreed that the master's findings of fact are correct, it cannot be contended that the canceling of an old certificate of deposit and the acceptance of a new one was not the act of the bank, but was the act of an individual controlling the bank, when the master's finding is that the exchange was the act of the bank, and when it appears that the claimant acted in good faith, there being no finding to the contrary.

4. BANKS AND BANKING—*when allowance of claim against insolvent bank not fraudulent.* The allowance of a claim against an insolvent bank cannot be objected to as a fraud on other creditors, the claim being that the bank was insolvent and carrying on business in violation of the law, when the claimant was not shown to have been charged with such fraud, but acted in good faith.

Appeal from the Circuit Court of Cook county; the Hon. JOHN P. McGOORTY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1921. Affirmed. Opinion filed May 17, 1922. *Certiorari* denied by Supreme Court (making opinion final).

HIRAM T. GILBERT, for appellant.

MUSGRAVE, OPPENHEIM & LEE, for appellee.

228    Appellate Courts of Illinois.

The People v. La Salle Street T. & S. Bank, 225 Ill. App. 227.

Mr. Presiding Justice O'Connor delivered the opinion of the court.

The State Bank of Omaha filed its claim for $20,600 against the receiver of the La Salle Street Trust & Savings Bank, claiming that it was a general creditor of that bank prior to June 12, 1914, the date on which the receiver was appointed. The matter was contested and was referred to a master in chancery to take the evidence and to report his conclusions both of fact and of law. The master accordingly took the evidence. He found the facts and recommended the allowance of the claim for the full amount. The report was approved by the chancellor and a decree entered that the claim be paid out of the assets of the Trust & Savings Bank in due course of administration, to reverse which the receiver prosecutes this appeal.

It is agreed that whether the claimant is entitled to have its claim allowed is to be determined by the facts as found by the master. So far as it is necessary to state them here, they are as follows: The State Bank of Omaha is a banking organization doing business in Omaha, Nebraska; the Trust & Savings Bank was organized under the laws of Illinois and conducted a banking business from October, 1912, until June 12, 1914, when, because of its insolvency, it was closed and a receiver appointed; from a period prior to 1910, C. B. Munday and J. G. Munday carried on a business under the name of the Bank of Smithboro, located at Smithboro, Illinois, until they were adjudicated bankrupts in July, 1914, they having become insolvent prior to April, 1914, and having so remained ever since; H. W. Huttig of Muscatine, Iowa, acquired 360 shares of the capital stock of the State Bank of Omaha which he obtained when that bank was organized in 1911, and which he held until 1917; about May 31, 1913, Huttig was indebted to the State Bank of Omaha on a note for $10,000; he applied to Munday, who was the managing vice-president of the Trust & Savings Bank,

and in complete control of its business, for a loan to take up the note; Munday gave him a certificate of deposit of the Bank of Smithboro for $20,000, dated May 31, 1913, due 12 months after date, with interest at the rate of 3 per cent per annum, payable to Munday's order and by him indorsed; it was agreed between Munday and Huttig that Huttig should sell the certificate, retain half of the proceeds and give the other half to Munday; Huttig upon receiving the certificate sold it to the State Bank of Omaha, which applied to the proceeds to the payment of Huttig's note and gave the balance to Huttig who turned it over to Munday; a few days before the certificate of deposit became due the State Bank of Omaha sent it to the Trust & Savings Bank, its Chicago correspondent, for collection and credit; it came into the hands of Munday who caused it to be forwarded to the Bank of Smithboro for cancellation and exchanged for a new certificate for the same amount payable to Munday's order. This was accordingly done and the new certificate dated June 3, 1914, and payable one year after date with interest at 3 per cent per annum, to Munday's order, was returned to the Trust & Savings Bank together with a check of the Bank of Smithboro for $600 in payment of the interest. It further appeared that the new certificate was never indorsed by Munday nor was the check for $600 indorsed, but both came to the hands of the receiver of the Trust & Savings Bank, and he subsequently sent them to the State Bank of Omaha, but the latter immediately returned them.

The facts as further found by the master are that when the Omaha Bank learned that it had not been given credit for the collection of the certificate by the La Salle Trust & Savings Bank, it took the matter up with Munday and Munday told them that it had been paid, but through an error of the clerk it had not been so noted; that shortly thereafter the State Bank of Omaha made a draft on the Trust & Savings Bank

230. APPELLATE COURTS OF ILLINOIS.

The People v. La Salle Street T. & S. Bank, 225 Ill. App. 227.

which draft was presented to the Trust & Savings but was not paid. The facts further show that Munday was a check kiter, his kites in the Trust & Savings Bank on May 28, 1914, amounting to $413,923.90; that between that date and June 12, 1914, when the Trust & Savings Bank suspended, his kites ranged between a minimum of $285,174.05 and a maximum of $454,-028.83; that on June 12, 1914, they amounted to $337,174.05, no part of which was ever collected; that the Bank of Smithboro had a deposit account in the Trust & Savings Bank but that it was made up of these kites; that C. B. Munday and J. G. Munday, having been adjudicated bankrupts less than 4 months after May 28, 1914, and having been on that date absolutely insolvent, it would have been an unlawful preference, under the Bankruptcy Act, to have paid the certificate of deposit to the State Bank of Omaha.

Counsel for the receiver first contends that the claim should not have been allowed because the undisputed facts show that when the State Bank of Omaha sent the certificate of deposit for collection and credit to the Trust & Savings Bank, the Bank of Smithboro, which was C. B. Munday and J. G. Munday, was insolvent and, therefore, the certificate of deposit worthless, and that even if the acts of Munday in causing this certificate to be surrendered up and canceled and a new one issued might be held to be the acts of the Trust & Savings Bank, yet the claim should not be allowed because the State Bank of Omaha was in no way damaged. And he argues that it is the law that where a bank receives a note or other paper for collection and accepts something other than money in payment thereof and surrenders the note up, the bank thereby makes itself liable to the owner of the note for the amount of it, if there is no evidence showing that the note was worthless. But where the evidence affirmatively shows that the note or paper was worthless and uncollectible at the time of its surrender, the bank is

not liable because no damage was done the owner of the note or paper. While this question is not free from difficulty, we think it is the law that where a note is sent to a bank for collection and the bank takes a check of the party who is bound to pay the note and surrenders the note and the check is not good, the bank is nevertheless liable. Section 252, 1 Morse on Banks and Banking (5th Ed.); *National Bank of Commerce v. American Exch. Bank,* 151 Mo. 320; *Fifth Nat. Bank v. Ashworth,* 123 Pa. St. 212; *Inter-State Nat. Bank v. Ringo,* 72 Kan. 116, 3 L. R. A. (N. S.) 1179. In 1 Morse on Banks and Banking, sec. 252, the author says: ''If the bank takes the check of the party who is bound to pay the paper, and thereupon surrenders the paper to him, it assumes the responsibility for the check proving good. If it is not paid, the bank is still obliged to pay the amount to the person from whom it received the paper.'' In the case of *National Bank of Commerce v. American Exch. Bank, supra,* it appeared that a draft had been sent to a bank for collection. The bank accepted a check on another bank in payment of the draft and surrendered the draft. It was there held that by so doing the bank made the check its own and that its liability was the same as if cash had been received, and that it was liable although the check was dishonored. The court there said (p. 329): ''The general rule is that an agent, being authorized to receive money only, has no implied power to receive a check or anything else except money in payment, and if he does so he assumes the risk of its payment and becomes liable to his principal for the amount of the check with interest from the date of its receipt by him. * * * In such circumstances, the law will presume damage to the principal and dispenses with proof thereof.'' In the *Ashworth* case the court said (p. 218): ''It is safe to say, as a general rule, that when a bank receives a check from one of its depositors for collection it must return him the check or money.

It is also equally clear that if the collecting bank surrenders the check to the bank upon which it is drawn, and accepts a cashier's check or other obligation in lieu thereof, its liability to its depositor is fixed, as much so as if it had received the cash. It has no right, unless specially authorized to do so, to accept anything in lieu of money." In a footnote to the *Ringo* case it is said: "In the absence of instructions to the contrary, or at least in the absence of a custom or instructions to the contrary, the weight of authority holds that a bank which receives a check, note or similar instrument for collection is limited to the receipt of cash in payment, and must either return the instrument received or the money, and if it surrenders the instrument in return for a check or other paper of the party upon whom it was drawn, it does so at its own risk, and is liable, irrespective of negligence in the collection of the substituted paper, if that paper is not paid." In the same footnote it is further said, after an analysis of the cases on a proposition similar to the one now under consideration, that very little is said in the authorities as to whether the owner of the note which has been surrendered for another paper must show actual damage before he can recover. In the *Ringo* case the bank held a note for collection and delivered it to an indorser on the day it was due in exchange for the latter's check upon another bank, and after inquiring, by telephone, of the drawee bank about the check, and being told, through a mistake, that the check would be paid, entered the amount to the credit of the owner of the note. On the next day payment of the check, which at no time was good, was refused for want of funds, and the collecting bank delivered it to the drawer and in return received the note of its principal. It was held that since the collecting bank had repossessed itself of the note it could not be held liable for what it had done. In the course of the opinion, the court there said, 3 L. R. A. (N. S.) (p. 1185): "There

is at least plausible ground for the argument that until the note is paid its owner is entitled to its possession and to all the incidental rights attached to it, and therefore an agent who fails to return either the very thing intrusted to him, or its equivalent in money, the only thing he is authorized to accept for it, should not be permitted to haggle about the extent of the resulting injury, but should be compelled to respond at once to his principal for the full amount of the note and to look for his own reimbursement to whatever rights he has succeeded in retaining against the maker.''

We think it would not be in accordance with a sound public policy to permit a bank which had received a note for collection and had surrendered it for a worthless check to set up as a defense to a claim of the owner of the note that the latter had not been damaged because the note was worthless.  In the absence of any express or implied agreement the bank should be required to return the note to the maker, or the money for it.  We think the point made by the receiver, therefore, is untenable and that the court did not err in allowing the claim.

But counsel for the receiver further contends that the canceling of the old certificate of deposit and the acceptance of the new one was not the act of the Trust & Savings Bank, but was the act of Munday, and that the Trust & Savings Bank was not bound by such acts.  In support of this counsel says that the State Bank of Omaha as holder of the certificate of deposit must be presumed to have known that the Bank of Smithboro was nothing more or less than Munday.  Of course, there is no finding of fact by the master, nor any intimation that the State Bank of Omaha had any such knowledge, but it appears that it acted in entire good faith.  It, therefore, follows that the conclusion reached by counsel for the receiver is unsound.  Moreover, the point is untenable for the reason that the master found that the exchange of the old certificate

for the new one was done by the Trust & Saving Bank, and it is agreed that the facts as found by the master are correct. It is, therefore, undisputed in the record that the act in exchanging the old for the new certificate of deposit was the act of the bank and not of Munday. Nor do we agree with the further contention made by the receiver to the effect that at law the claim here would be a fraud on the creditors of the Trust & Savings Bank. The argument in support of this seems to be that at the time of the exchange of the old for the new certificate, the Trust & Savings Bank was insolvent and had been insolvent for several months prior to that time, and that it was fraudulently carrying on business in violation of law. We think this could not affect the claim in question, since the claimant here was in no way charged with any knowledge of the fraud, and appears to have acted, unquestionably, in good faith.

We think the claim was properly allowed, and the decree of the circuit court of Cook county is, therefore, affirmed.

*Affirmed.*

THOMSON and TAYLOR, JJ., concur.