THE FARMERS AND MERCHANTS NATIONAL BANK OF BRIDGETON, NEW JERSEY, A NATIONAL BANKING CORPORATION, PLAINTIFF-RESPONDENT, v. BOARDWALK NATIONAL BANK, DEFENDANT-RESPONDENT, AND HAMMONTON INVESTMENT & MORTGAGE CO., DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued June 3, 1968—Decided June 25, 1968.

Before Judges GAULKIN, LEWIS and KOLOVSKY.

*Mr. Clarence Blitz* argued the cause for appellant.

*Mr. Samuel J. Serata* argued the cause for plaintiff-respondent.

*Mr. John R. Armstrong* argued the cause for defendant-respondent (*Messrs. Kirkman, Mulligan, Bell & Armstrong*, attorneys).

The opinion of the court was delivered by

KOLOVSKY, J. A. D. Plaintiff (Farmers), claiming to be a holder in due course of seven drafts dated January 12, 1966 drawn by Reeves Motors, Inc. (Reeves) to its own order on defendant Hammonton Investment & Mortgage Co. (Himco) and "payable through Boardwalk National Bank, Atlantic City, New Jersey" (Boardwalk), recovered a judgment for $10,250, the amount of the drafts, plus interest, against Himco and Boardwalk. The order for judgment further provided that Boardwalk, which had filed a cross-claim against Himco, should "be entitled to judgment against [Himco] for any sum it may be required to pay plaintiff on account of the above judgment." Himco appeals both from the judg-

ment for plaintiff and the judgment entered in Boardwalk's favor on its cross-claim. Boardwalk did not appeal.

Most of the essential facts are stipulated. Himco, a finance company and a checking account depositor in the Boardwalk bank, financed sales made on conditional sales contracts or other security agreements by Reeves, an automobile dealer. Reeves was a checking account depositor in the Farmers bank.

In accordance with its prior practice, Reeves on January 12, 1966 deposited the seven drafts with Farmers, which credited the amount thereof, $10,250, to Reeves' checking account. With that credit, Reeves' balance totalled $12,- 345.03. On the same day, January 12, checks drawn by Reeves totaling $11,261.05 were cleared through and charged against Reeves' account, leaving a balance of $1,083.98. On January 13 Reeves made deposits totaling $7,300; a check for $7,953.05 drawn by it cleared the bank, reducing its credit balance to $430.13. Further charges against the account reduced Reeves' balance to $6.21 on January 18, 1966.

Meanwhile, Farmers had delivered the seven drafts to its correspondent bank, First Pennsylvania Banking and Trust Company. The latter delivered them at about 1:30 P. M. on January 13 to the Federal Reserve Bank of Phila- delphia, which in turn mailed them to Boardwalk in the Federal Reserve's "afternoon cash letter" of January 13.

The drafts were received at Boardwalk's "operations office" on Black Horse Pike, Pleasantville, before 2 P. M. on Friday, January 14.

The drafts were received at Boardwalk's Hammonton branch office, where Himco banked, by Tuesday morning, January 18. Sometime between 10:30 A. M. and 12 noon on that day, Boardwalk notified Himco by telephone that it had the seven drafts.

It should be noted at this point that each of the drafts was on a printed form, captioned "Cash Item Payable at Par," prepared by Himco for the use of its customers. Left

to be filled in on the printed form of the draft proper were only the date, the amount, the name of the payee and the signature of the drawer (dealer), and in a data column captioned "Contract(s) covered by this draft," the last name of the purchaser of the automobile and the amount of the draft. The printed form contained the following paragraph immediately above the line provided for the signature of the drawer:

"In consideration of your immediate payment of this draft, covering your purchase of the supporting contract(s) contained in the EN-VELOPE MAILED TO YOU THIS DATE bearing this draft number, Undersigned hereby agrees that if any such contract is not received by you Undersigned will repurchase the same or honor your draft upon presentation, for the amount you have paid for the same."

It is evident from the quoted paragraph that the draft contemplated immediate payment thereof on presentment to the drawee Himco instead of an "acceptance"—"the drawee's signed engagement to honor the draft as presented," *N. J. S.* 12*A*:3-410—to be followed by payment in performance of the agreement of acceptance.

The contemplated procedure was that followed when Himco's representative appeared at the Hammonton branch of Boardwalk shortly before 3 o'clock in the afternoon of Tuesday, January 18. Himco's check for $15,000 drawn on its account with Boardwalk and payable to the order of Boardwalk was delivered to Boardwalk. The seven Reeves' drafts, as well as drafts drawn by other dealers in the amount of the difference between $15,000 and $10,500, each stamped "Paid, January 18, 1966, The Boardwalk National Bank, Atlantic City, N. J.", were delivered in exchange to Himco's representative.

Later that afternoon, after the bank had closed, Himco's representative telephoned Boardwalk and "requested that the drafts be returned, that he be permitted to return them and get his money back." He was told that the bank's "returns office was closed and nothing could be done until the fol-

lowing morning." Himco says that its call to the bank was prompted by the discovery, when the drafts were brought back to its office, that it had not received any contracts from Reeves covering those drafts.

On the following morning, January 19, Boardwalk's Hammonton branch, at the request of Himco, returned Himco's $15,000 check to it, took back the seven drafts and wrote the words "stamped in error" over the paid stamps.[1] The only proof offered as to what was said or agreed to when the check was returned to Himco and the drafts returned to Boardwalk was the stipulation that "the representative of the bank gave no assurance they [the drafts] could be returned, but said it would try to do so as requested."

Later that day Boardwalk notified the Federal Reserve Bank in Philadelphia by telephone that the drafts, only six of which were then or thereafter identified, were being returned for the reason, "payment refused." In turn, at 2:36 P. M. on January 19, Federal Reserve notified the First Pennsylvania Banking & Trust Company of the six identified drafts being returned and the reason for the return.

The six drafts were received by the Federal Reserve Bank on January 20 and delivered to the First Pennsylvania Bank about 11 A. M. on that day. The seventh draft for $900 was similarly received and delivered later the same day.

The First Pennsylvania returned all seven drafts to Farmers, which thereafter instituted this action against Boardwalk and Himco. The sole theory of the claim for relief pleaded by plaintiff—which then did not know of all that had taken place at Hammonton—was that defendants Boardwalk and Himco "by their delay in notifying plaintiff of their refusal to pay said items in a timely manner, accepted said items." However, the trial was not limited to

---

[1] In response to our inquiry at oral argument, we were told that the $15,000 check had been destroyed. No evidence was offered as to what notations or entries were made on Boardwalk's records with respect to the $15,000 check between the time it was delivered to Boardwalk on January 18 and returned to Himco on January 19.

the theory originally pleaded, a theory not supported either by the proofs or the law, see *N. J. S.* 12*A*:4–202(2); *N. J. S.* 12*A*:4–104(*c*), (*h*); *N. J. S.* 12*A*:4–106. Instead, with the consent of the parties, the trial proceeded to a determination of the legal rights and obligations of the respective parties arising from the stipulated facts and from the proofs offered by Farmers and Boardwalk. Those proofs dealt only with banking practices and the issue of Farmers' good faith.

Basic to a resolution of the rights and obligations of the parties was a decision as to whether or not Farmers was a holder in due course,

"a holder who takes the instrument (a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonered or of any defense against or claim to it on the part of any person." *N. J. S.* 12*A*:3–302(1).

The trial court ruled that Farmers was a holder in due course. Himco challenges the court's findings with respect to the elements of "value" and "good faith."

 "Good faith" is "honesty in fact in the conduct or transaction concerned." *N. J. S.* 12*A*:1–201(19); *N. J. Mtge. & Inv. Corp. v. Calvetti*, 68 *N. J. Super.* 18, 26 (*App. Div.* 1961). The trial court's finding that Farmers took the drafts in good faith is supported by the record; we may not disturb it. *State v. Johnson*, 42 *N. J.* 146, 162 (1964). That Farmers permitted Reeves to draw its checks against uncollected funds at a time when its account was otherwise low is not in itself evidence that Farmers did not act in good faith. *Citizens Nat. Bank of Englewood v. Ft. Lee S. & L. Ass'n*, 89 *N. J. Super.* 43, 48 (*Law Div.* 1965); *N. J. Mtge. & Inv. Corp. v. Calvetti*, *supra*.

██ Further, it is clear that Farmers had given "value." *N. J. S.* 12*A*:4–208(1)(a) provides:

"(1) A bank has a security interest in an item and any accompanying documents or the proceeds of either

(a) in case of an item deposited in an account to the extent to which credit given for the item has been withdrawn or applied."

The full amount of the credit given to Reeves for the drafts, $10,250, had been withdrawn, thus vesting Farmers with a security interest to that extent in the drafts and a concommitant status as a holder in due course.

"For purposes of determining its status as a holder in due course, the bank has given value to the extent that it has a security interest in an item provided that the bank otherwise complies with the requirements of 12A:3–302 on what constitutes a holder in due course." *N. J. S.* 12A:4–209;

See also, *N. J. S.* 12A:3–303; *Citizens Nat. Bank of Englewood v. Ft. Lee S. & L. Ass'n, supra,* at *p.* 49; Annotation, 59 *A. L. R. 2d* 1173 (1958).

■ We find no merit in Himco's suggestion that one who acquires a draft prior to acceptance is not a holder in due course. The law in this State is settled to the contrary, *Seneca County Trust Co. v. Swiller Bros.,* 7 *N. J. Misc.* 591, 146 *A.* 654 *(Sup. Ct.* 1929), and nothing in the Uniform Commercial Code abrogates holder in due course status predicated on whether acceptance preceded or succeeded acquisition of title to a draft.

We turn next to a consideration of the legal effect and consequences of what took place after the drafts reached Hammonton. We have noted that the drafts, by their terms, were payable through Boardwalk, thus designating Boardwalk "as a collecting bank to make presentment," *N. J. S.* 12A:3–120. As a collecting bank, Boardwalk was Farmers' agent, authorized to receive payment of the drafts, *N. J. S.* 12A:4–201(1), and obligated to seasonably transmit the payment through appropriate channels to Farmers. *N. J. S.* 12A:4–202(1)(c).

■ Here, Boardwalk was also the bank in which Himco maintained a checking account. It was a check drawn on that account, payable to the order of Boardwalk, which

Himco delivered to Boardwalk as Farmers' collecting agent in purported payment of the drafts, which were then stamped "Paid" and surrendered to Himco. We are satisfied and hold that delivery of such a check constituted payment of the drafts as effectively as if cash rather than the check had been given. See 10 *Am. Jur. 2d, Banks,* § 727, *p.* 694:

> "The courts hold, almost without exception, that a collection by a bank by the medium of a check on itself is a valid payment, since the payor should not be required to go through the idle ceremony of withdrawing the money from the bank and then paying it back to the bank."

Payment of an instrument to a collecting bank is the equivalent of payment to its principal, the owner of the instrument, and constitutes an absolute discharge thereof. *Ibid.,* § 697, *p.* 667. The payment was final as far as Farmers was concerned; "payment or acceptance of any instrument is final in favor of a holder in due course." *N. J. S.* 12A:3–418. Farmers then became entitled to receive the payment which Boardwalk had collected on its behalf.

Neither Himco nor Boardwalk, nor the two acting jointly, had any power to revoke the payment and final settlement as against Farmers, a holder in due course.

It is of no moment that Himco did not learn until after it had paid the drafts that Reeves had not forwarded the accompanying contract documents. It is the drawee's responsibility to ascertain the status of the drawer's account with him before accepting or paying a draft upon presentment; after acceptance or payment, the drawee has no power to revoke because of the drawer's insolvency or breach of contract. *Trent Tile Co. v. Fort Dearborn Nat. Bk.,* 54 *N. J. L.* 33 (*Sup. Ct.* 1891), affirmed 54 *N. J. L.* 599 (*E. & A.* 1892); 11 *Am. Jur. 2d,* § 596, *p.* 665.

Boardwalk's authority to collect the drafts on Farmers' behalf did not empower it to agree on Farmers' behalf to a rescission of the completed payment and settlement. 1 *Restatement, Agency 2d* § 72 (1958); see *Monongahela*

*Nat. Bank v. First Nat. Bank,* 226 Pa. 270, 75 A. 359, 361, 26 L. R. A., N. S., 1098 (*Sup. Ct.* 1910).

On the contrary, in paying the money back to Himco and accepting the return of the drafts, Boardwalk violated its duty as collecting agent and was therefore properly held liable to its principal, plaintiff Farmers. Its liability for breach of duty is in no wise mitigated by the fact that it acted to accommodate its checking account customer, Himco.

Further, Himco is also liable to Farmers—and judgment was therefore also properly entered against it for the $10,250 plus interest involved—because, without being privileged to do so, it caused Boardwalk to violate its duty as collecting agent to transmit that amount to its principal Farmers. 2 *Restatement, Agency 2d* § 312 (1958); *Hirsch v. Schwartz,* 87 N. J. Super. 382, 390 (*App. Div.* 1965).

Finally, we find no reason to interfere with the judgment entered in favor of Boardwalk and against Himco on the cross-claim in view of the circumstances indicating Himco's implied undertaking to hold Boardwalk harmless from liability to Farmers if Boardwalk acceded to Himco's request for a return of its check and a cancellation of the "Paid" stamps on the drafts.

The judgment is affirmed.