**GHISELLI BROS., INC., Plaintiff**

**v.**

**RYAN, INC. and AMERIKA SAMOA BANK, Defendants**

High Court of American Samoa
Trial Division

CA No. 103-89

September 1, 1992

Before KRUSE, Chief Justice, TAUANU'U, Chief Associate Judge, and MATA'UTIA, Associate Judge.

Counsel:     For Plaintiff, John L. Ward II
             For Defendant Ryan, Inc., Roy J.D. Hall, Jr.
             For Defendant Amerika Samoa Bank, William H. Reardon

On Motions for Reconsideration or New Trial, Motions for Summary Judgment, and Motions for Stay of Execution:

On June 4, 1991, this Court issued its Opinion and Order on Motion for Summary Judgment, which found both defendants, Ryan, Inc. ("Ryan") and Amerika Samoa Bank ("ASB"), jointly and severally liable to the plaintiff Ghiselli Bros., Inc. ("Ghiselli") in the amount of $44,033.38. This sum reflected the purchase price for a container of meat products shipped c.i.f. by Ghiselli to Ryan, for which ASB was to act as the collecting bank; the products were discovered to be spoiled when the container was opened, so Ryan stopped payment on the check that it had previously tendered to ASB for payment of the consignment. All three parties have since filed motions for reconsideration; Ryan alternatively moved for a new trial. In addition, ASB and Ryan have moved for opposing summary judgments on their cross-claims against each other. Both defendants have also moved for a stay of execution in the event their relevant motions are denied.

Plaintiff's motion for reconsideration was at least partially denied by the Court's order of June 17, 1991. The Court denied plaintiff's motion to reconsider "having to do with its request for attorney fees either as incidental damages or collection costs." The attorney fees are thus no longer at issue. Plaintiff has, however, reiterated its request for an award of pre-judgment and post-judgment interest on the debt owed.

Both defendants seek remittitur of the award of damages by $12,000, as Ghiselli received that sum from the insurer[1] of the spoiled container on December 8, 1989. This was the only basis for ASB's Motion for Reconsideration.

Ryan's Motion for Reconsideration or New Trial, filed June 14, 1991, and corrected June 21, 1991, alleges several errors by the Court, including the above remittitur issue, the grant of summary judgment for

---

[1] The insurer has refused to pay on the claim for the container because it believed that Ryan's acts and omissions regarding the container caused the loss and because the original insurance documents and bill of lading apparently have not, to this date, been filed with the insurance company as required. Also, the claim was filed six months after the discovery of the spoilage, which was not the "immediate notice" required by the insurer.

plaintiff, and the failure to grant summary judgment for Ryan against ASB. These are discussed in more detail below.

Ryan's motion for summary judgment rests on ASB's alleged negligence in retaining the original insurance documents and bill of lading, both of which Ryan obtained when it delivered the check and returned to ASB upon discovery of the spoilage, or alternatively on ASB's breach of its contract with Ghiselli to accept only local currency from Ryan when acting as Ghiselli's collecting bank.

ASB's motion for summary judgment rests on its claim that Ryan is ultimately liable for the sum because Ryan ordered ASB to stop payment on the check which paid for the goods, and ASB's compliance with this stop-payment order resulted in ASB's liability to Ghiselli.

All of these motions were consolidated for hearing and were heard on October 25, 1991.

## DISCUSSION

### 1. Interest

The plaintiff asked for interest both in the original complaint, which resulted in the Opinion and Order filed June 4, 1991, and in its motion to reconsider, which resulted in the Order filed June 17, 1991; neither order addressed this issue.

Plaintiff asked for interest a third time at the hearing on October 25, 1991. The defendants opposed this claim. A.S.C.A. § 28.1501(a) provides that "[t]he rate of interest when there is no written agreement with respect thereto *shall* be 6 percent a year, and interest *shall be presumed on overdue debts.*" (Emphasis added). This presumption was applied in *Pritchard v. Amerika Samoa Bank*, 8 A.S.R.2d 157, 162 (App. Div. 1988), in which the appellate court held that "[t]he statutory rate where no interest is specified is 6%." *See also Meridian Breckwoldt Samoa, Ltd. v. Haleck*, 7 A.S.R.2d 95, 101 (1988). Both cases then imposed pre-judgment interest from the date the respective indebtedness became due until the dates of judgment and post-judgment interest thereafter. While the silence of this Court on two previous occasions might normally be taken as an implicit denial of the motion, in this case the object of the motion, interest, is statutorily presumed and therefore should be awarded. We thus grant plaintiff's motion insofar as it seeks reconsideration of any implied denial that may have occurred.

59

## 2. *Remittitur*

Ghiselli's Memorandum of Points and Authorities in support of its Motion for Summary Judgment asked for the amount of the sight draft "less any set-off from the insurance settlement, if applicable," but the issue was not addressed by the Court. It was then raised in the Motion for Reconsideration by ASB but put off for further hearing by the Court's Order on the Motions for Reconsideration of June 17, 1991, as not having yet been argued in a hearing.[2]    Ryan's Motion for Reconsideration or New Trial also raised this issue, but that motion has yet to be addressed as well.

Ghiselli now argues that the insurance amount is not a windfall, but an "accommodation" from the insurer due to Ghiselli's position as a good customer of the insurance company.    Ghiselli cites *Procter & Gamble Distributing Co. v. Lawrence American Field Warehousing Corp.*, 213 N.E.2d 873 (N.Y. 1965), to support its claim that the money belongs to either Ghiselli or the insurance company and that this Court therefore has no power to decide the issue because the insurance company is not a party.   In *Proctor & Gamble*, however, the money at issue was paid as a deposit by the purchaser of vegetable oil that vanished; Proctor & Gamble might have had an obligation to return some or all of the deposit, and because the purchaser was not a party to the action, the court could not determine the rights and obligations regarding the money.    Here, the money is a payment from an insurer; it has nothing to do with a potential obligation to refund the "deposit" because the goods were never received.   The money is clearly a payment for a loss, whether it is called an accommodation or a settlement, and such payment is the purpose of insurance companies.

A similar situation confronted the court in *Meridian Breckwoldt Samoa, Ltd. v. Haleck*, 7 A.S.R.2d 95, 98-100 (1988).   In that case, the defendant agreed to purchase a quantity of "safety glass" for windshields from the plaintiff.   The safety glass was delivered, but the defendant refused to pay for it.   Plaintiff and its parent company in Germany then sought to recover the price of the glass from the shipping line that had released the glass to the plaintiff without receiving full payment as required by the shipping contract.    The parent company eventually obtained a settlement from the shipping line.   In the later suit filed in

---

[2]  It seems that neither defendant raised this matter until after the grant of summary judgment.

American Samoa, the court held that the plaintiff could not recover the entire purchase price because it had been partially reimbursed by the shipping line.

The Court in its Opinion and Order of June 4, 1991, concluded that Ghiselli bore no risk of loss since the goods were shipped on c.i.f. terms.[3] Thus, when Ghiselli first approached the insurance company with a claim on the loss, the latter could deal with Ghiselli only *as an agent of Ryan*, since the c.i.f. policy benefitted *Ryan* once the goods were delivered to the carrier in California.

We find the reasoning in *Meridian* to be persuasive and conclude that Ryan is entitled to remittitur to account for the $12,000 settlement with the insurance company. ASB will also benefit from this settlement, as a plaintiff cannot recover twice for the same injury.

*3. Motions for Summary Judgment*

Ryan alleges the Court erred in not granting summary judgment for Ryan against ASB for ASB's negligence in retaining the original documents or ASB's breach of its contract with Ghiselli in acting as the collecting bank; alternatively, Ryan asks for indemnity on either or both of these grounds. ASB, on the other hand, claims that this motion was denied in the original June 4, 1991, Opinion on Ghiselli's Motion for Summary Judgment. But ASB is clearly mistaken; the Court's opinion unequivocally states that "[w]e express no opinion concerning the rights and liabilities between Ryan and the Bank." (Slip op. at 7). The motion therefore is properly before the Court.

ASB's breach of its contract with Ghiselli is the basis of its liability to Ghiselli, but it has no effect on the rights and obligations between ASB and Ryan.

ASB disputes the allegations of negligence, claiming it had an obligation to its customer to honor the stop-payment order and that it had orders from Ghiselli's bank, the Bank of the West, that required it to hold the documents unless it was specifically told otherwise. This dispute is over a material issue, as it forms the very grounds of Ryan's motion. To resolve this issue, the Court would need to assess "the

_____

[3] A letter on file from the insurer to Ghiselli of July 18, 1989, also emphasizes this fact.

evidence as well as [the parties'] credibility. Such an assessment is inappropriate on a motion for summary judgment." *Ah Mai v. American Samoa Gov't*, 11 A.S.R.2d 133, 137 (1989). Thus, regardless of the merits of the underlying contentions, summary judgment for Ryan must be denied.

ASB's opposing Motion for Summary Judgment claims that Ryan is ultimately liable for the goods because it ordered ASB to stop payment on the check. The cases cited by ASB to support this proposition clearly show Ryan's liability to Ghiselli, and some show the ordinary position of a drawee bank of a check that has had payment stopped to the drawee and maker of the check, but they do not address the issue of the cross-claim--Ryan's obligation to indemnify ASB, a collecting bank as well as a drawee bank. Only one of these cases included as a party a bank collecting on a draft. In that case, *Farmers & Merchants Nat'l Bank v. Boardwalk Nat'l Bank*, 245 A.2d 35 (N.J. 1968), Hammonton Investment & Mortgage Co. ("Himco") issued a draft to Reeves Motors ("Reeves"), which was then deposited in Reeves' checking account with Farmers & Merchants National Bank ("Farmers"). Farmers processed the check and permitted Reeves to write checks against the amount. The drafts were drawn on Himco's checking account with Boardwalk National Bank ("Boardwalk"). After Boardwalk processed the drafts as "paid," Himco induced Boardwalk to take back the checks and return them to Farmers as "payment refused." The court affirmed the holding that both Himco and Boardwalk were liable to Farmers for the amount of the drafts. Additionally, it affirmed the judgment for Boardwalk on its cross-claim against Himco, but it did so because Himco had given an implied undertaking to hold Boardwalk harmless from liability to Farmers if Boardwalk acceded to Himco's request for return of the check after it had been stamped "paid." No express undertaking was evident in the present case, and the Court cannot find such an implied undertaking at the summary-judgment stage, so the case does not support a similar resolution at this point in this case.

The focus should not be on the stop-payment order, however; instead, it should be on the bases for the liability of the two defendants. Regardless of any negligence by ASB, the underlying obligation of Ryan to Ghiselli would exist and does exist. Ryan's liability stems from its contract with Ghiselli to purchase the meat products; the c.i.f. nature of the contract obligated Ryan to pay for these goods once they were delivered to the carrier in California, regardless of their condition on arrival or whether they ever arrived. ASB's liability stems from its failure to comply with its contract with Ghiselli to act as the collecting

bank in the transaction with Ryan, and to accept only local currency or its equivalent in exchange for the title documents. By varying the terms of its contract with Ghiselli, ASB "obligated itself to make good any difference between the effect of what it did and the effect of what it had contracted to do." Opinion and Order, slip op. at 6 (filed June 4, 1991).

The general rule for recovery when a bank is negligent in collecting a draft is that the bank is liable for the actual loss suffered by the owner of the commercial paper as a result of the negligent misconduct of the bank. 10 Am. Jur. 2d *Banks* § 737, at 702; *see also Cleve v. Craven Chem. Co.*, 18 F.2d 711, 716 (4th Cir. 1927); *but see Fifth Nat'l Bank v. Ashworth*, 16 A. 596 (Pa. 1889). "Nominal damages only have been held to be recoverable where it appears that, despite the collecting bank's improper act or omission, the paper remains collectible." 10 Am. Jur. 2d *Banks* § 738; *see Stark v. Public Nat'l Bank of N. Y.*, 123 Misc. 647, 206 N.Y.S. 8 (N.Y. App. 1924); *but see Fifth Nat'l Bank v. Ashworth*, 16 A. 596 (Pa. 1889). In this case, the paper is currently collectible under the judgment against Ryan, and Ryan should thus indemnify ASB for the amount of the judgment.

*4. Ryan's Motion for Reconsideration or New Trial*

Ryan's remaining allegations of errors by the Court are summarized as follows:

(a) Ryan alleges the summary judgment for Ghiselli was in error because there was a factual dispute between Ghiselli and Ryan about how the goods were damaged. This factual dispute, however, was not over a *material* fact, and summary judgment was therefore appropriate. The court accepted Ryan's version of the events for purposes of the summary judgment motion and still found Ryan liable because of the nature of a c.i.f. contract.

(b) Ryan alleges the Court erred in granting summary judgment for Ghiselli because Ghiselli did not timely file an insurance claim, even though it knew or should have known that ASB had the original documents. Under a c.i.f. contract, however, the seller has no responsibility to file such a claim; the insurance policy benefits the buyer. Summary judgment was therefore proper.

*5. Request for a Stay of Execution*

63

Both defendants have moved for a stay of execution of the judgment if the court denies their relevant motions. Save as provided by T.C.R.C.P. 62(a), request to stay execution of judgment in favor of plaintiff is denied.

## ORDER

The Motions for Reconsideration are GRANTED as to interest and remittitur and are DENIED as to all other issues.

Plaintiff shall have judgment against the defendants jointly and severally in an amount equal to the following: $44,033.38, the purchase price for the container of goods; plus 6% pre-judgment interest from January 19, 1989, the date when Ryan took possession of the original documents; minus the $12,000 insurance settlement as of December 8, 1989, the date it was received by Ghiselli; and plus post-judgment interest at 6%. Counsel for plaintiff shall prepare a proposed amended judgment for the Court's signature, along with a schedule showing how the amount of the judgment was calculated.

The Motion for Summary Judgment by Ryan against ASB is DENIED. The Motion for Summary Judgment by ASB against Ryan is GRANTED, obligating Ryan to indemnify ASB on the judgment in favor of Ghiselli. The request for a stay is DENIED.

It is so ordered.